Carol B. FOLAN

v.

**STATE of Rhode Island/DEPARTMENT OF CHILDREN, YOUTH, AND FAMILIES and Frederick Lumb.**

No. 97–274–Appeal.

Supreme Court of Rhode Island.

Jan. 22, 1999.

Anthony F. DeMarco, Gregory L. Boyer, Providence, Robert E. Savage, Warwick, for plaintiff.

James R. Lee, Providence, Sandra A. Lanni, Warwick, for defendant.

Present: WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

WEISBERGER, Chief Justice.

This case comes before us on the appeal of the plaintiff, Carol B. Folan, from a motion to

dismiss for failure to state a claim upon which relief can be granted entered in favor of the defendants. We reverse the judgment of the Superior Court. The facts insofar as pertinent to this appeal are as follows.

The Department of Children, Youth, and Families (DCYF), employed the plaintiff, Carol B. Folan (plaintiff), as a child protective investigator. During her period of employment, the plaintiff alleges that her supervisor, Frederick Lumb (Lumb), sexually harassed her. Lumb's harassment allegedly consisted of both verbal and physical acts, including physical assaults on the plaintiff, attempts to molest her, sending gifts and flowers, writing notes, and implying a sexual affair to other co-workers. Due to the harassment, the Workers' Compensation Court, in a subsequent review, found that the plaintiff suffered an "occupational stress" injury in the course of her employment of which DCYF had notice. As a result of the injury, the Workers' Compensation Court ordered DCYF to pay benefits to plaintiff for total incapacity in accordance with the Workers' Compensation Act (WCA). *See* G.L. 1956 chapter 29 of title 28.

The plaintiff subsequently filed a complaint in Providence County Superior Court under the State Fair Employment Practices Act, G.L.1956 chapter 5 of title 28, and the Civil Rights Act of 1990, G.L.1956 chapter 112 of title 42, as well as under article 1, section 2, of the Rhode Island Constitution and the Civil Rights of People with Disabilities statutes, G.L.1956 chapter 87 of title 42, for compensation for lost wages and damages. The defendants moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure, arguing that plaintiff's election of benefits under the WCA barred her later action for the same injuries in Superior Court. After hearing from both sides, the trial justice granted defendants' motion to dismiss.

■■■ "Before reaching the merits of [plaintiff's] appeal, we are reminded that when reviewing a trial justice's order granting a Rule 12(b)(6) motion to dismiss, this [C]ourt examines the allegations contained in the plaintiff's complaint, assumes them to be true, and views them in the light most favorable to the plaintiff." *Ellis v. Rhode Island Public Transit Authority,* 586 A.2d 1055, 1057 (R.I.1991). "The motion will then be granted only when it is clear beyond a reasonable doubt that the plaintiff would not be entitled to relief from the defendant under any set of facts that could be proven in support of the plaintiff's claim." *Id.* Therefore, for purposes of this appeal, the plaintiff's allegations are assumed to be true.

On appeal, plaintiff argues that the exclusivity provision of the WCA, § 28–29–20, does not bar independent statutory causes of action. The defendants contend, however, that since plaintiff voluntarily chose to receive benefits under the WCA for the injuries asserted in the instant action, she is barred from asserting a subsequent action based on the same injuries. At issue then is the correct interpretation of the exclusivity clause of the WCA. That statute provides:

"Rights in lieu of other rights and remedies.—The right to compensation for an injury under chapters 29—38 of this title, and the remedy therefor granted by those chapters, shall be in lieu of all rights and remedies as to that injury now existing, either *at common law or otherwise* against an employer, or its directors, officers, agents, or employees; and those rights and remedies shall not accrue to employees entitled to compensation under those chapters while they are in effect, except as otherwise provided in §§ 28–36–10 and 28–36–15." (Emphasis added.) Section 28–29–20.

The defendants argue that the "or otherwise" language in the exclusivity clause precludes the instant statutory cause of action. We disagree.

■■■ When confronted with multiple statutes, "it is this [C]ourt's responsibility in interpreting [the] legislative enactment[s] to determine and effectuate the Legislature's intent and to attribute to the enactment[s] the meaning most consistent with [their] policies or obvious purposes." *Brennan v. Kirby,* 529 A.2d 633, 637 (R.I.1987). "[S]tatutes which relate to the same subject matter should be considered together so that they will harmonize with each other and be consis-

tent with their general objective scope [even if] *** the statutes in question contain no reference to each other and are passed at different times." *State v. Ahmadjian,* 438 A.2d 1070, 1081 (R.I.1981). Unfortunately, the statutes in issue here are silent about their interrelationship and none expressly mentions the others. Thus, resolution of this conflict requires consideration of the objectives of the statutes.

The WCA, enacted in 1912, "seeks to ameliorate much of the physical, emotional, and financial adversity visited upon workers and their families in the wake of an employment-related injury." *DiQuinzio v. Panciera Lease Co.,* 612 A.2d 40, 42 (R.I. 1992). By providing for a system of compensation distinct from actions in tort, the WCA embodies a legislative compromise between the interests of employees and employers in regard to work-related injuries. *Id.* The WCA provides an alternative to tort liability, making an employer "liable for certain accidental injuries for which before he was not liable." *National India Rubber Co. v. Kilroe,* 54 R.I. 333, 336, 173 A. 86, 87 (1934). "To accomplish this end, [the WCA] establishes a scheme that furnishes a fixed rate of compensation to eligible employees injured within the course of their employment." *DiQuinzio,* 612 A.2d at 42. Under this compromise, an injured employee "gives up the right to pursue an action at law that, although potentially more remunerative, is likely to be protracted and may well be unsuccessful." *Id.*

The exclusivity clause of the WCA plays a vital role in executing this legislative compromise by providing that the right to compensation for an injury under the WCA "shall be in lieu of all rights and remedies as to that injury now existing, either at common law or otherwise against an employer ***." Section 28–29–20. Regarding policy and purpose, the exclusivity clause is "intended to preclude any common-law action against an employer, substituting a statutory remedy at the election of the employee when he enters employment." *Hornsby v. Southland Corp.,* 487 A.2d 1069, 1072 (R.I.1985). In order to provide a simple and expeditious procedure by which an injured employee can receive

compensation, "[t]he act abolished the employee's right to a common-law action, and deprived the employer of certain common-law defenses ***." *Id.*

Subsequently, the Legislature enacted the State Fair Employment Practices Act (FEPA) in 1949, G.L.1956 chapter 5 of title 28. In its current form, the FEPA prohibits discrimination on the basis of race, religion, sex, sexual orientation, disability, age, or national origin. Section 28–5–2. The FEPA is designed to assure equal employment opportunities for all persons by eliminating discriminatory practices.

Unlike the WCA, the FEPA is concerned with safeguarding an employee's right to obtain and hold employment without being subjected to discrimination. Section 28–5–3. "Such discrimination foments domestic strife and unrest, threatens the rights and privileges of the inhabitants of the state, and undermines the foundations of a free democratic state." Section 28–5–2. Moreover, it "deprive[s] large segments of the population of the state of earnings necessary to maintain decent standards of living, necessitates their resort to public relief, and intensifies group conflicts, thereby resulting in grave injury to the public safety, health, and welfare." *Id.* Therefore, the Legislature declared the right of all individuals to equal employment opportunities, regardless of race, sex, sexual orientation, disability, age, or national origin, to be a civil right. Section 28–5–5.

Similarly, the Civil Rights Act (CRA), enacted in 1990, gives protection to "[a]ll persons within the state, regardless of race, color, religion, sex, disability, age, or country of ancestoral origin ***." Section 42–112–1. The CRA "addresses and defines the rights to which all Rhode Island citizens are entitled ***." *Ward v. City of Pawtucket Police Department,* 639 A.2d 1379, 1381 (R.I. 1994). Under the CRA, a person is given "broad protection against all forms of discrimination in all phases of employment." *Id.*

Other jurisdictions, faced with interpreting an exclusivity clause similar to the instant provision, have recognized that "[t]he evils at which the [FEPA and the CRA] are aimed

are different from those at which the [WCA] is directed." [1] *Boscaglia v. Michigan Bell Telephone Co.*, 420 Mich. 308, 362 N.W.2d 642, 645 (Mich.1984). "The WCA focuses on the employee and his or her work-related injury while the [FEPA and the CRA] focus[ ] on employer conduct that undermines equal opportunity in the workplace." *Byers v. Labor and Industry Review Commission*, 208 Wis.2d 388, 561 N.W.2d 678, 682 (Wis. 1997). "The WCA compensates an employee for workplace injury ***; it is designed to relieve the financial burdens of injured workers and to protect employers from financial burdens by providing them with immunity from [common law causes of action]." *Id.* On the other hand, the FEPA and the CRA are "designed to provide statutory redress for employment discrimination." *Id.* Those statutes "enforce the rights of the public and implement a public policy that the [L]egislature considered to be of major importance." *Id.*

In remarking further on the differing purposes of the statutes, Chief Justice Abrahamson of the Wisconsin Supreme Court made the following incisive comments:

"Unlike the WCA, the WFEA [Wisconsin Fair Employment Act] is concerned with deterring and remedying intangible injuries which rob a person of dignity and self-esteem and with eliminating a discriminatory environment in the workplace that affects not only the victim of discrimination but the entire workforce and the public welfare.

"***

"[The] DIHLR [the Wisconsin Enforcement Agency] has the power to 'order such action . . . as will effectuate the [WFEA's] purpose.' *** The court has stated that the WFEA 'evinces a legislative intent that DIHLR have authority to fashion an appropriate remedy for a victim of discrimination that comports with the purposes of the Act.' *** The WCA, in contrast, gives no authority to the administrative agency to make a finding of discrimination, to order the employer to desist from discrimination, to reinstate an employee who has been discriminatorily discharged, actually or constructively, or to redress the discriminatory conduct that has been expressly defined as contrary to the public policy of this state.

"Because the WCA does not identify, fully remedy or adequately deter an employer's discriminatory conduct, it cannot adequately address discrimination in the workplace. Sole reliance on the WCA would neither address employment discrimination nor serve as a deterrent against employment discrimination. Indeed, had the legislature intended the purposes of the WFEA to be accomplished through the WCA, enactment of the WFEA might have been a hollow legislative gesture." *Id.* 561 N.W.2d at 681–82.

 Given the disparate purposes of the WCA as compared to the FEPA and the CRA, coupled with our goals of harmonizing the statutes and giving effect to the legislative intent, we conclude that the Legislature did not intend the exclusivity provision of the WCA to bar the independent statutory claims created by the FEPA or the CRA. We presume that the Legislature understood the nature of its prior legislation, *Defenders of Animals, Inc. v. Department of Environmental Management*, 553 A.2d 541, 543 (R.I. 1989), when it promulgated the FEPA and the CRA after the enactment of the WCA. Allowing the exclusivity clause to bar claims under the FEPA or the CRA would in effect allow employers to escape liability in many instances for their discriminatory practices. Indeed, the exclusivity clause of the WCA as interpreted by defendants could render the FEPA and the CRA nugatory and ineffective.

 That is not to say, however, that the exclusivity clause is inapplicable to all statutory claims. *See Manzi v. State of Rhode*

1. *See also Byrd v. Richardson–Greenshields Securities, Inc.*, 552 So.2d 1099 (Fla.1989); *Meyers v. Chapman Printing Co.*, 840 S.W.2d 814 (Ky. 1992); *College–Town, Division of Interco, Inc. v. Massachusetts Commission Against Discrimination*, 400 Mass. 156, 508 N.E.2d 587 (Mass. 1987); *Sabella v. Manor Care, Inc.*, 121 N.M. 596, 915 P.2d 901 (N.M.1996); *Reese v. Sears, Roebuck & Co.*, 107 Wash.2d 563, 731 P.2d 497 (Wash.1987), *overruled in part on other grounds, Phillips v. City of Seattle*, 111 Wash.2d 903, 766 P.2d 1099 (Wash.1989).

*Island,* 687 A.2d 461, 462 (R.I.1997) (exclusivity clause bars subsequent statutory claim of invasion of privacy). Rather, under our interpretation, the exclusivity clause does not bar a claim if to do so would frustrate a broad, fundamental public policy which fulfills paramount purposes, such as a claim under the FEPA or the CRA. In the instant case, the paramount purpose of these anti-discrimination statutes goes well beyond compensating for physical injury or inability to perform employment duties. These objectives cannot be subverted by the exclusivity clause of the WCA, regardless of how benign the purpose of that clause may be in numerous other contexts.

■ Nevertheless, we are of the opinion that any payments made by the State of Rhode Island for loss of earning capacity should be fully credited against any award achieved by plaintiff pursuant to her claims under the FEPA or the CRA. *See generally Benders v. Board of Governors For Higher Education,* 636 A.2d 1313, 1315 (R.I.1994). We note in passing that plaintiff has expressed full agreement with the granting of such a dollar-for-dollar credit.

■ We also observe that since the FEPA and the CRA provide comprehensive remedies for employer discrimination, it is unnecessary to create or recognize a direct remedy pursuant to article 1, section 2, of the Rhode Island Constitution. Such a remedy should be reserved for situations where no statutory remedy is provided.[2] *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (which holds that a direct constitutional remedy is provided for violations of Fourth Amendment rights by federal officials when Congress has enacted no statutory remedy similar to 42 U.S.C. § 1983, which provides remedies only against a state official).

For the reasons stated, the plaintiff's appeal is sustained, the judgment of the Superior Court is reversed, and the papers of the

case are remanded to the Superior Court for further proceedings.

---

2. We express no opinion on the merits of the plaintiff's claim under the Civil Rights of People with Disabilities statutes, G.L.1956 chapter 87 of title 42, save to observe that recovery and remedy under the statute would depend upon the facts of the case as they may be developed during trial. To the extent that this statute would overlap or duplicate remedies available under the FEPA or the CRA, only one recovery would be allowed.