Gail HARGREAVES, Individually and in her capacity as the Administratrix of the Estate of John F. Hargreaves

v.

Allen JACK et al.

Gail Hargreaves, Individually and in her capacity as the Administratrix of the Estate of John F. Hargreaves

v.

Steven Reis et al.

No. 98–563–Appeal.

Supreme Court of Rhode Island.

May 12, 2000.

David Oliveira, for Plaintiff.

Kathleen M. Powers, Marc DeSisto, Providence, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

**O P I N I O N**

WEISBERGER, C.J.

This case came before the Court on the plaintiff's appeal from the entry of summary judgment in the Superior Court in favor of the defendants. For the reasons stated below, we vacate the summary judgment and remand the case for further proceedings consistent with this opinion.

The facts in this case are not in dispute. The plaintiff, Gail Hargreaves (Gail or plaintiff), is the widow of John F. Hargreaves (Hargreaves), who, after nineteen years of service as a firefighter, suffered a fatal injury while in the course of his employment for the City of Pawtucket on August 22, 1993.[1] He had responded to a fire at 100 Cottage Street in Pawtucket. While he was tending his pumper truck in accordance with departmental policy, and by order of his immediate supervisor, another superior officer ordered Hargreaves into the building. As the conditions worsened, the commanding officer decided to evacuate all firefighters from the building, but the officers in charge were unable to track the whereabouts of all personnel on the scene. Hargreaves was left behind in the building. By the time he was able to escape from the flames, he had suffered fatal injuries, and died one month later.

On March 22, 1996, plaintiff, individually and in her capacity as the administratrix of the estate of John F. Hargreaves, filed a wrongful death action in Providence County Superior Court against the City of Pawtucket (city) and two superior officers. In this original complaint, she sought to hold these defendants liable for their alleged negligence in the management and supervision of the firefighting operation. She alleged that the ordering of Hargreaves into the building by his superiors, and the manner in which the battalion commander managed the fireground violated departmental policy.

---

1. We note that there is some discrepancy between the facts as alleged in plaintiff's original complaint and as stated in plaintiff's briefs. While the complaint cites August 22, 1993 as the date of the fire, the briefs cite the date as September 21, 1993.

Subsequent to the filing of this first action, this Court decided *Kaya v. Partington*, 681 A.2d 256 (R.I.1996), in which we held that G.L.1956 § 45–19–1, otherwise known as the injured-on-duty (IOD) benefits statute, was the exclusive remedy for firefighters and police officers for injuries occurring in the line of duty. Believing that this Court's holding in *Kaya* essentially would bar her claims against the individual firefighters and the city, and because the statute of limitations was about to terminate in respect to the first action, plaintiff filed a second complaint against the individual police officers at the scene. She maintained that they were negligent in their provision of fireground support and security in the area surrounding the fire, and that this was a proximate cause of Hargreaves's injuries.

In her second action, plaintiff argued that *Kaya* does not extend to the individual police officers in the department, and, in the alternative, that the IOD statute violates certain federal and state constitutional provisions.[2] The defendants removed the case to Federal District Court with respect to the claims arising under the Federal Constitution, and then filed a motion to dismiss. A federal district court judge granted a motion to dismiss the federal claims, and declined to exercise pendent jurisdiction over the claims arising under the Rhode Island Constitution. The judge remanded the remaining state law claims to the Rhode Island Superior Court. Both complaints were consolidated, and defendants moved for summary judgment on the wrongful death action, and to dismiss the second complaint. The trial justice granted both motions. Relying on our decision in *Kaya*, the trial justice held that the IOD statute was the exclusive remedy for a "firefighter injured in the line of duty," and that it precluded negligence suits against superior and fellow officers. The trial justice reasoned that this Court's decision in *Kaya* "suggests that [we] would include negligence claims across departmental lines and fellow officers of the same rank." The trial justice further concluded that plaintiff's constitutional challenges had no merit. She specifically noted that the "IOD statute gave plaintiff rights that she would not have had without the statute because of the doctrine of sovereign immunity and the police officers'/firefighters' rule." The trial justice also found that the "statute specifically lays out [a rational] principle to which an administrative officer must conform when it compensates firefighters and their families for injuries incurred in the line of duty."

The issues raised by this appeal are whether our decision in *Kaya* operates as a matter of law to preclude plaintiff's wrongful death action, and, if so, whether the IOD statute violates provisions of the Rhode Island Constitution.

■ When reviewing the grant of a summary judgment motion, "this Court employs the same standard on review as the trial justice." *Splendorio v. Bilray Demolition Co.*, 682 A.2d 461, 465 (R.I. 1996). We must review "all the pleadings, affidavits, admissions, and other appropriate evidence in the light most favorable to the nonmoving party and then [determine] if the moving party is entitled to judgment as a matter of law." *Benner v. J.H. Lynch & Sons, Inc.*, 641 A.2d 332, 335 (R.I.1994). For the reasons set forth below, we reverse the trial justice's grant of summary judgment.

The history of the IOD statute and its amendments thereto are discussed in de-

**2.** The plaintiff first argued that the exclusive and non-elective nature of the IOD remedy abrogates her right to a jury trial, due process, and equal protection as guaranteed by the Rhode Island and Federal Constitutions. Second, she argued that the IOD statute as written leaves her without an adequate reme- dy at law. Finally, she maintained that the IOD's provisions for allocating benefits, specifically, leaving the determination of spousal annuities in the hands of the board of fire fighter's relief (Fire Fighter's Relief Board), is an impermissible delegation of legislative authority.

tail in *Kaya*, and do not need repeating here. In that case, we were faced with a police sergeant who was injured by an unknown assailant in the course of making an arrest. *See Kaya*, 681 A.2d at 258. Kaya alleged that his employer was negligent in providing white shirts instead of blue shirts as part of his uniform, thereby making him a more likely target for assault, and by failing to give him "riot gear." *Id.*

▪ In *Kaya*, we held that § 45–19–1 was the officer's exclusive remedy and precluded a separate tort action against his employer and the municipality. 681 A.2d at 260. We inferred an exclusivity provision implicit in the statutory framework in light of the goals and purposes of the IOD statute. Like the Workers' Compensation Act (WCA), the IOD remedy "allows a recovery without [a] showing of fault and is not subject to the various tort defenses." *Id.* In order to achieve this goal, the Legislature explicitly required that the WCA be the exclusive remedy available to injured workers, completely replacing all other remedies. *See id.* We inferred a similar implicit intent of exclusivity with respect to the IOD remedy.

▪ In the instant case, we distinguish our opinion in *Kaya*, wherein the officer received a greater benefit under the IOD statute than he would have received under the WCA. The intent behind § 45–19–1 was to "provide greater work-related-injury benefits to certain public employees whose jobs require them to serve the state or its municipalities, often in dangerous

situations." *Labbadia v. State*, 513 A.2d 18, 21 (R.I.1986). Under the IOD statute, a firefighter injured while in the performance of his duties would receive his full salary, while under the WCA, an "employee [would receive] only [a] percentage of salary provided in G.L.1956 (1979 Reenactment) § 28–33–17." *Labbadia*, 513 A.2d at 21. In *Kaya*, we did not, however, confront the impact of the IOD provisions on a surviving spouse's separate statutory right to bring a wrongful death action.[3]

Subsequent to our decision in *Kaya*, we examined the effect of the exclusivity provision on independent statutory claims. *See Folan v. State/Department of Children, Youth, and Families*, 723 A.2d 287 (R.I.1999). In *Folan*, we held that the exclusivity provision in the WCA did not bar a claim under the Fair Employment Practices Act (FEPA) or the Civil Rights Act (CRA). We reasoned that the "disparate purposes of the WCA as compared to the FEPA and the CRA" suggested that the Legislature did not intend the exclusivity provision to bar such claims. *Id.* at 291. We found that the WCA did not fully remedy the problems that these statutes were designed to address. *See id.* Hence, the exclusivity clause does not bar a claim "if to do so would frustrate a broad fundamental public policy which fulfills paramount purposes * * *." *Id.* at 292.

▪ The Wrongful Death Act was designed to remedy the pecuniary loss and the loss of consortium suffered by the surviving spouse although such remedy was unknown to the common law.[4] The

---

**3.** General Laws 1956 § 10–7–1 provides:
"Whenever the death of a person shall be caused by the wrongful act, neglect, or default of another, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, the person who, or the corporation which, would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to a felony."

**4.** Section 10–7–1.1 provides in pertinent part:
"Pecuniary damages * * * shall be ascertained as follows:
(1) Determine the gross amount of the decedent's prospective income or earnings * * *.
(2) Deduct from the amount determined in subdivision (1) the estimated personal expenses that the decedent would probably have incurred for himself or herself, exclusive of any of his dependents, over the course of his or her life expectancy.
(3) Reduce the remainder thus ascertained to its present value * * *."

provisions for a surviving spouse under the IOD statute, however, do not even come close to providing such a comprehensive remedy for plaintiff's loss. The greatest benefit that plaintiff could achieve under the IOD scheme would be $3,600 per year—much less than a surviving spouse would receive under the WCA.[5] Under the WCA, G.L.1956 § 28–33–12 provides in pertinent part:

"(a)(1) If death results from the injury, the employer shall pay the dependents of the employee wholly dependent upon his or her earnings for support at the time of his or her injury or death whichever is the greater in number, a weekly payment equal to the rate that would have been payable for total incapacity to the deceased employee * * *.

"(2) If the dependent is a surviving spouse * * * the employer shall pay the surviving spouse the weekly rate for total incapacity the deceased employee would have been entitled to receive under the provisions of § 28–33–17 plus twenty dollars ($20.00) per week for each dependent child.

" * * *

"(f) When a surviving spouse without dependent children remarries, benefits payable under this section shall cease on the date of the remarriage.

"(g) A surviving spouse entitled to benefits under this section shall receive an annual cost of living increase of four percent (4%) on every anniversary date of the receipt of his or her first payment for so long as he or she is eligible for benefits under this section."

Section 10–7–1.2(a) provides:
"Whenever the death of a married person shall be caused by the wrongful act, neglect, or default of another person, the decedent's spouse may recover damages against the person for loss of consortium."

5. It is a matter of importance that $3,600 per annum is the *maximum* benefit that may be paid to the surviving spouse in the discretion of the Fire Fighter's Relief Board. Therefore,

In addition, § 28–33–17 provides in pertinent part:

"(a)(1) While the incapacity for work resulting from the injury is total, the employer shall pay the injured employee a weekly compensation equal to seventy-five percent (75%) of his or her average weekly spendable base wages, earnings, or salary * * *.

" * * *

"(c)(1) Where the employee has persons conclusively presumed to be dependent upon him or her or in fact so dependent, * * * the sum of twenty dollars ($20.00) shall be added for those receiving benefits under § 28–33–12 * * *."

For purposes of receiving benefits under these sections of the WCA, the Legislature has conclusively presumed a surviving spouse to be "wholly dependent for support" on the deceased. *See* § 28–33–13. In addition to compensation for pecuniary losses, the WCA provides an additional $5,000 for burial expenses.[6]

Unlike the situation in *Kaya*, the IOD statute is not even remotely remedial with respect to surviving spouses. The IOD remedy for a surviving spouse is so meager that we can regard it only as a token amount, and not as compensation for the pecuniary loss for which the Legislature intended to compensate a surviving spouse under the WCA. The disparity between these benefits is so great that we would not infer an intent on the part of the Legislature to make the IOD benefit exclusive in this context in the absence of a specific provision declarative of such intent.

it is conceivable that the surviving spouse ultimately could receive less.

6. General Laws 1956 § 28–33–16 provides:

"If the employee dies as a result of the injury, the employer shall pay in addition to any compensation provided for in this chapter the sum of five thousand dollars ($5,000), this sum shall be paid under the provisions of § 28–33–23."

We also note that the Legislature specifically precluded wrongful death actions in the WCA, see G.L.1956 § 28–29–21, thereby making the WCA the exclusive remedy for surviving spouses. However, there is no similar explicit provision in the IOD statute. Consequently, based upon our interpretation of the relevant statutes, we do not infer an intent on the part of the Legislature to exclude a surviving spouse's remedy under G.L.1956 § 10–7–1 of the wrongful death statute by reason of the IOD benefits conferred in contrast to its explicit provision of exclusivity in the WCA.

■ It is a well-known maxim of statutory interpretation that this Court "will not construe a statute to reach an absurd [or unintended] result." *Kaya*, 681 A.2d at 261. We believe that it would be nothing short of an absurd result for this Court to infer that the Legislature intended to limit a surviving spouse's remedy to a meager monthly stipend of $300 as opposed to weekly benefits of $440—the maximum weekly rate in 1993—and a cost-of-living adjustment under the WCA.

■ This opinion in no way alters our holding in *Kaya*. The exclusivity provision inferred in *Kaya* would apply to those provisions in the wrongful death statute that authorize recovery for the pain and suffering sustained by the decedent and his loss of earnings prior to his demise.[7]

■ This opinion in no way purports to express any judgment upon the likelihood of success of a wrongful death action brought by the decedent's beneficiaries.

We merely hold that § 45–19–12 of the IOD statute, with respect to the claim of a surviving spouse, is not an exclusive remedy, and that plaintiff is not limited to the statutory benefits contained therein, but may seek additional remedies made available by § 10–7–1 for wrongful death, subject to any applicable common-law and statutory defenses. Therefore, we remand this case for trial on the wrongful death actions, with the caveat that the city should get credit against any recovery for the monthly IOD stipend if plaintiff has elected to claim it. We express no opinion at this time concerning the duty of the city to indemnify the individual officers, who are defendants in this case, for damages and/or counsel fees. We also express no opinion concerning whether the city would be entitled to the limitations on damages as provided in the State Tort Claims Act, G.L.1956 § 9–31–12.

In light of the foregoing analysis, we do not need to reach the merits of plaintiff's constitutional challenges.

The plaintiff's appeal is sustained and we vacate the summary judgment entered in favor of the defendant, City of Pawtucket, and the defendant's superior officers in respect to the claim of the surviving spouse for pecuniary damages. We also vacate the dismissal of the claim of the plaintiff in her second action (PC 96–4460) insofar as said action seeks damages on behalf of the surviving spouse for pecuniary damages authorized by the wrongful death statute. The papers in this case are remanded to the Superior Court for fur-

---

7. Section 10–7–5 provides in pertinent part:

"Whenever the death of a person shall be caused by the wrongful act, neglect, or default of another, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, the person who * * * would have been liable if death had not ensued shall be liable to an action for damages, in addition to the one provided for under §§ 10–7–1—10–7–4 for the hospital, medical, and other expenses incurred, including diminution of earning power until time of death, by or in behalf of the party injured by reason of the wrongful act * * *."

Additionally, § 10–7–7 provides that "[i]n an action under § 10–7–5, recovery may be had for pain and suffering." An action brought under § 10–7–1 and §§ 10–7–5 or 10–7–7, are independent causes of action. *See O'Leary v. Bingham*, 90 R.I. 441, 159 A.2d 619 (1960). Therefore, this opinion is limited only to the damages plaintiff would be able to seek under § 10–7–1.

ther proceedings consistent with this opinion.

FLANDERS, Justice, concurring in part and dissenting in part.

For the reasons stated by the Court and for those set forth in my dissenting opinion in *Kaya v. Partington*, 681 A.2d 256, 267–71 (R.I.1996) (Flanders, J. dissenting), I agree that the so-called Injured On Duty (IOD) statute, G.L.1956 chapter 19 of title 45, does not bar plaintiff from pursuing her surviving spouse's remedy under the Wrongful Death Act (WDA), G.L.1956 chapter 7 of title 10. But for these same reasons I also do not believe that the IOD statute bars plaintiff from recovering under §§ 10–7–5 and 10–7–7 of the WDA for her deceased husband's pain and suffering and for the lost earning power that he experienced before his death. Thus, I respectfully disagree with that portion of the Court's opinion.

I also believe that the result in this case illustrates the difficulty of the Court's attempt in *Kaya* to transmute legislative silence into an audible signal of exclusivity for the IOD benefit scheme. As it now stands, a majority of the Court believes that the IOD statute is the exclusive remedy for injured public-safety officers against their own governmental employers, superior officers, fellow officers, and officers of the municipal corporation, *see Kaya*, 681 A.2d at 260, but not for the statutory claims of their surviving spouses brought against these same defendants under the WDA—except for any pain and suffering and lost earning-power damages that the deceased may have experienced before his death. As to these latter WDA claims, the majority believes that the implied exclusivity provision of the IOD scheme bars such express statutory claims. On the other hand, the majority holds that the implied exclusivity of the IOD statute does not bar WDA claims brought by the surviving spouses of firefighters against police officers employed by the same municipality.

Thus, importing an exclusivity provision into the IOD statute for certain types of tort claims filed by public-safety officers or their surviving spouses results in the following crazy quilt of potential liability:

(1) Public-safety officers may not pursue common-law negligence claims against their own governmental employers, fellow officers, superior officers, and officers of the municipal corporation, see Kaya, 681 A.2d at 260, but the surviving spouses of deceased public-safety officers may sue the very same governmental employers, fellow officers, superior officers, and officers of the municipal corporation of their deceased spouses for negligence under the WDA. Notice that in *Kaya* the majority believed that "[i]t would be productive of near chaos if we should recognize a right of action for police officers, firefighters, and crash-rescue crewmembers to sue their superior officers and fellow employees," *Kaya*, 681 A.2d at 261, but apparently it is not so "detrimental to good order and discipline," *id.*, to allow their surviving spouses to file such suits after their officer-spouses have died rather than after they have suffered mere incapacitation in the line of duty.

(2) Notwithstanding the ability of surviving spouses of deceased public-safety officers to sue for negligence under the WDA, the majority holds that the IOD's implied exclusivity bars them from recovering under that same act for their deceased spouses' pain and suffering and lost earning power.

(3) The implied exclusivity of the IOD statute does not bar surviving spouses of deceased firefighters from suing police officers employed by the same municipality that employed their deceased spouses for alleged negligence in causing their spouses' deaths, and, presumably, the surviving spouses can also recover for their deceased spouses' pain and suffering and lost earning power damages from these defendants.

As the above schematic shows, I believe that the sounds of silence emanating from the IOD's "implied exclusivity" provisions

are proving much too Delphic to indicate reliably which of the various WDA remedies are legally available to the surviving spouses of deceased public-safety officers and which are not. I believe that the more defensible result from the standpoint of pure statutory interpretation—as opposed to enacting our own personal preferences into law—is as I suggested in my *Kaya* dissent: the absence of any exclusivity provision in the IOD statute indicates that it should not be interpreted as the sole remedy for injured public-safety officers and their surviving spouses vis-à-vis their government employers and other potentially responsible tortfeasors. *See Kaya*, 681 A.2d at 268. Unlike the WCA, *see* G.L.1956 §§ 28–29–20 and 28–29–21,[8] the IOD statute contains no express exclusivity provisions that would bar any of the WDA claims that are at issue here, and none of its express provisions is inconsistent with allowing these WDA claims to proceed. Moreover, far from impliedly barring suits against fellow employees, superior officers, and officers of the municipal corporation, § 45–19–1.1 of the IOD statute itself provides in pertinent part that

"[w]here the injury or sickness for which compensation is payable under § 45–19–1, was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect of the injury or sickness, the employee may take pro-

ceedings, against that person to recover damages, and the employee shall be entitled to receive both damages and compensation ; provided, that the employee, in recovering damages either by judgment or settlement from the person liable to pay damages, shall reimburse the city, town, or the state of Rhode Island by whom the compensation was paid to the extent of the compensation paid as of the date of the judgment or settlement, and the receipt of those damages by the employee does not bar future compensation." (Emphasis added.)[9]

But even after giving *Kaya* its full force and effect, I still would not extend its holding to negate independent statutory claims like those authorized by the WDA. It is one thing, as in *Kaya*, for the Court to import an exclusivity provision into the IOD statute and then proclaim that it bars all common-law claims that otherwise might be brought by public-safety officers against their governmental employers, fellow officers, superior officers, and officers of the municipal corporation. *But compare Kaya*, 681 A.2d at 260 ("It is true that when adopted by the Legislature, the IOD statute contained no such exclusivity provision. However, as with the WCA, the remedy provided for in the IOD statute must be exclusive."); *with Aldcroft v. Fidelity & Casualty Co. of New York*, 106 R.I. 311, 316–17, 259 A.2d 408, 412–13 (1969) ("it is our opinion that if, in enacting

---

8. General Laws 1956 § 28–29–20 provides as follows:

"**Rights in lieu of other rights and remedies.**—The right to compensation for an injury under chapters 29—38 of this title, and the remedy therefor granted by those chapters, shall be in lieu of all rights and remedies as to that injury now existing, either at common law or otherwise against an employer, or its directors, officers, agents, or employees; and those rights and remedies shall not accrue to employees entitled to compensation under those chapters while they are in effect, except as otherwise provided in §§ 28–36–10 and 28–36–15."

Section 28–29–21 provides:

"**Wrongful death law inapplicable.**—In all cases where an employer and employee shall have elected to become subject to the provisions of chapters 29—38 of this title, the provisions of § 10–7–1 et seq. shall not apply while those chapters are in effect." The IOD contains no such provisions.

9. Indeed, pursuant to G.L.1956 §§ 45–19–1.1 through 45–19–1.6, the municipal employer is entitled to indemnification from third parties who are liable to pay damages to the public-safety officer for any IOD compensation payable to that officer under § 45–19–1 and from any officer who has received any such damages to the extent that any IOD benefits have been paid to the officer. *See, e.g., Manzotti v. Amica Mutual Insurance Co.*, 695 A.2d 1001 (R.I.1997).

§ 45–19–1 [the IOD statute], the legislature had intended to abrogate the collateral source rule, it would have said so in express terms"). But it is quite another to conclude that the Legislature intended for the IOD statute's *implied* exclusivity to bar an *express* and *independent statutory* cause of action created by the General Assembly—such as the express remedies provided by the WDA to the surviving spouses of deceased public-safety officers. In this situation, I would limit *Kaya* to its facts and not extend its holding to bar independent statutory claims or remedies. Indeed, just as the WCA did not fully remedy the problems that the Fair Employment Practices Act and the Civil Rights Act were intended to address, *see Folan v. State Department of Children, Youth, and Families,* 723 A.2d 287 (R.I. 1999) (refusing to allow the WCA's express exclusivity provisions to bar independent statutory causes of action), so too the IOD benefit provisions for the spouses of deceased firefighters do not fully remedy the problems that the WDA is intended to address, including an award of monetary damages to surviving spouses for the deceased public-safety officer's pain and suffering and lost earning power.

As it now stands, however, an *implied* exclusivity rule in the IOD statute has been deemed to preclude some but not all of the *express* WDA remedies that are allowed via an independent statutory cause of action. Absent an irreconcilable conflict between these two statutes, I would not interpret the Legislature as having intended that the IOD statute would impliedly bar some, but not all, of the express remedies allowed by the WDA—especially when it would seem possible to construe both statutes to give effect to all of their respective provisions.

For these reasons, I concur in so much of the Court's opinion as allows this plaintiff, a surviving spouse of a deceased public-safety officer, to sue any and all potentially responsible parties under the WDA for any and all remedies available to her thereunder (subject to whatever other defenses may be available to these defendants). I respectfully dissent, however, from so much of the Court's opinion as prevents her from doing so. Thus, I agree with that portion of the Court's opinion concluding that the IOD statute does not prevent the surviving spouse from suing all allegedly responsible parties who may have caused or contributed to her husband's death, but I dissent from that portion of the Court's opinion that precludes the surviving spouse from suing under the WDA to recover for her deceased husband's pain and suffering and lost earning power. I further concur with the Court's caveat that, in the surviving spouse's suit against the municipality, "the City should get credit against any recovery for the monthly IOD stipend if plaintiff has elected to claim it." In doing so, however, I note that in *Aldcroft,* 106 R.I. at 316–17, 259 A.2d at 412–13, we held "that if, in enacting [the IOD statute], the legislature had intended to abrogate the collateral source rule [also a common-law doctrine], it would have said so in express terms." Therefore, I would not allow any of the other defendants in this case to receive any credit if the plaintiff has elected to claim her IOD benefits under § 45–19–12.