Richard T. NASSA

v.

HOOK–SUPERX, INC., et al.

No. 2000–171–Appeal.

Supreme Court of Rhode Island.

Feb. 15, 2002.

Michael H. Feldhuhn, for Plaintiff.

William P. Robinson III, Edwards & Angell, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

This case broaches a question of first impression in Rhode Island: does G.L.1956 § 28–29–20 (the exclusive-remedy provision) of the Workers' Compensation Act (WCA or the act) bar work-related defamation claims filed by employees against their employers and coworkers? Because defamation injures an employee's reputation and because injury to reputation is not "an injury under chapters 29— 38 of this title [the WCA's title 28]," we hold that the WCA's exclusive-remedy provision does not bar such claims.

## Facts and Travel [1]

The plaintiff, Richard T. Nassa (Nassa), began working for the Adams Drug Company (Adams) in July 1986 as a real estate manager. In 1987 Brooks Drug, Inc. (Brooks) acquired Adams and, a year later, Hook–SupeRx, Inc. (Hook), one of the nation's largest retail drug-store chains, acquired Brooks.[2] In 1989 Hook promoted Nassa to the position of assistant vice president of real estate.

The defendant Peter Prokopchuk (Prokopchuk) served as Hook's vice president of planning and presentation. In November 1992, Prokopchuk allegedly told Lee Merkel, a Hook real estate manager who worked under Nassa, that "Nassa's taking money from landlords," thereby intimating that property owners had been funneling improper "kickbacks" to Nassa for procuring leases with Hook. Prokopchuk supposedly repeated this allegation to other Hook executives.

Hook also employed defendant David Saurette (Saurette) as a construction manager. Nassa alleged that Saurette repeatedly told property owners that were seeking to lease property to Hook—as well as others in the real estate and construction industry—that "[i]f you want to do business with Brooks Drug, you have to pay Nassa." Nassa asserted that, as a result of these false and defamatory statements, Hook damaged his reputation and then fired him in September of 1993, causing him to lose wages.

On October 21, 1993, Nassa filed this Superior Court action against Hook, Brooks, Prokopchuk, and Saurette. His third-amended complaint contained five counts. Counts 1 and 2 alleged that the individual and corporate defendants had defamed him. Count 3 alleged intentional infliction of emotional distress against Hook. Counts 4 and 5 alleged that Hook had violated state and federal employment-discrimination laws.

More than five years later, in May 1999, defendants moved under Rule 12(c) of the Superior Court Rules of Civil Procedure for partial judgment on the pleadings with respect to counts 1, 2, and 3. The defendants argued that the WCA's exclusive-remedy provision barred these claims. The motion justice granted defendants' motion and entered an order and judgment under Rule 54(b) of the Superior Court Rules of Civil Procedure dismissing these three counts. Nassa later filed this appeal, challenging only the court's grant of a partial final judgment on the defamation counts (counts 1 and 2). Thus, counts 3, 4, and 5 are not before us on this appeal.

## Standard of Review

"Questions of law and statutory interpretation * * * are reviewed *de novo* by this Court." *Heflin v. Koszela,* 774 A.2d 25, 31 (R.I.2001) (quoting *Rhode Island Depositors Economic Protection Corp. v. Bowen Court Associates,* 763 A.2d 1005, 1007 (R.I.2001)). When construing a statute, "this [C]ourt has the responsibility of effectuating the intent of the Legislature by examining a statute in its entirety and giving the words their plain and ordinary meaning." *Matter of Falstaff Brewing Corp. Re: Narragansett Brewery Fire,* 637 A.2d 1047, 1049 (R.I.1994). "If the statutory language is clear and unambigu-

---

1. The facts stated herein are those alleged in Nassa's third amended complaint. We assume these facts to be true solely for the purpose of deciding this appeal. *See Haley v. Town of Lincoln,* 611 A.2d 845, 847 (R.I. 1992).

2. After the acquisition, Hook continued to do business in Rhode Island under the name of "Brooks Drug." The plaintiff's third amended complaint named both Hook and Brooks throughout as defendants.

ous, 'this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings' in determining the Legislature's intent." *Local 400, International Federation of Technical and Professional Engineers v. Rhode Island State Labor Relations Board,* 747 A.2d 1002, 1004 (R.I.2000) (quoting *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1226 (R.I.1996)).

## Analysis

Section 28–29–20 of the WCA provides, in pertinent part, that:

"The right to compensation for an injury under chapters 29—38 of this title, and the remedy for it granted by those chapters, shall be in lieu of all rights and remedies as to that injury now existing, either at common law or otherwise against an employer, or its directors, officers, agents, or employees * * *."

The motion justice ruled that this exclusive-remedy statute barred Nassa's attempt to prosecute defamation claims in Superior Court because his right to compensation for his alleged injuries from these tortious acts fell within the WCA's ambit.

The WCA's statutory purpose is to "improve the safety of the workplace and the rehabilitation to gainful employment of the injured worker * * *." Section 28–29–1.2(a)(2). Enacted in 1912, the WCA also "seeks to ameliorate much of the physical, emotional, and financial ad-

versity visited upon workers and their families in the wake of an employment-related injury." *DiQuinzio v. Panciera Lease Co.,* 612 A.2d 40, 42 (R.I.1992). In return for obtaining a speedy no-fault compensation remedy, the incapacitated employee "gives up the right to pursue an action at law that, although potentially more remunerative, is likely to be protracted and may well be unsuccessful." *Id.* "Essential to this delicate quid pro quo is the 'exclusive remedy doctrine', which holds that the workers' compensation system must be the exclusive forum for an injured worker's redress." Joan T.A. Gabel and Nancy R. Mansfield, *Practicing in the Evolving Landscape of Workers' Compensation Law,* 14 Lab. Law. 73, 73 (1998).

The prevalent view throughout the nation, however, is that the exclusive-remedy provisions of workers' compensation laws do not bar employment-related defamation claims.[3] Indeed, according to the leading commentator on workers' compensation law, "[i]t is generally held that an action for libel or slander does not come within the [workers' compensation] exclusive remedy provision. * * * [Because] the real gist of slander is not personal injury." 6 A. Larson & L. Larson, *Larson's Workers' Compensation Law,* § 104.04 at 104–16–17 (2001).

Originally, ecclesiastical courts retained exclusive jurisdiction over defamation claims because of the perceived sinful or spiritual nature of such wrongs.[4] Indeed,

---

**3.** *See Braman v. Walthall,* 215 Ark. 582, 225 S.W.2d 342 (1949); *Perry v. Stitzer Buick GMC, Inc.,* 637 N.E.2d 1282 (Ind.1994); *Kiner v. Reliance Insurance Co.,* 463 N.W.2d 9 (Iowa 1990); *Foley v. Polaroid Corp.,* 381 Mass. 545, 413 N.E.2d 711 (1980); *Dockins v. Ingles Markets, Inc.,* 306 S.C. 287, 411 S.E.2d 437 (1991); *Mounteer v. Utah Power & Light Co.,* 823 P.2d 1055 (Utah 1991); *Snead v. Harbaugh,* 241 Va. 524, 404 S.E.2d 53 (1991).

*See also* other cases collected at Erwin S. Barbre, J.D., *Workmen's Compensation Provision as Precluding Employee's Action Against Employer for Fraud, False Imprisonment, Defamation or the Like,* 46 A.L.R.3d 1279 (1972).

**4.** Colin Rhys Lovell, *The "Reception" of Defamation By the Common Law,* 15 Vand. L.Rev. 1051, 1056 (1962). In formulating the *Circumspecte Agatis,* 13 Edward I, c. 1 (1285),

the common law did not recognize a cause of action for defamation until the late 14th century.[5] But now we conceive of defamation as a tort that "tends to injure 'reputation'"[6]—an intangible but much-prized piece of personalty that Shakespeare dubbed "the immortal part" of each person:[7]

> "The purest treasure mortal times afford Is spotless reputation: take that away, Men are but gilded loam or painted clay."[8]

■ Injury to reputation "involves the idea of disgrace;" yet "[d]efamation is *not* concerned with the plaintiff's own humiliation, wrath or sorrow." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, § 111 at 771, 773 (5th ed.1984). Rather, defamation is based on "conduct which injuriously affects a [person's] reputation, or which tends to degrade him [or her] in society or bring him [or her] into public hatred and contempt * * *." *Swerdlick v. Koch*, 721 A.2d 849, 860 (R.I. 1998) (quoting *Elias v. Youngken*, 493 A.2d 158, 161 (R.I.1985)). In fact, some courts have gone so far as to suggest that defamation does not result in a personal injury at all, but instead affects a "proprietary interest." *Dockins v. Ingles Markets, Inc.*, 306 S.C. 287, 411 S.E.2d 437, 438 (1991) (citing *Battista v. Chrysler Corp.*, 454 A.2d 286 (Del.Super.Ct.1982)).

■ But however one defines defamation or its consequences, the scope of the exclusive-remedy doctrine as embodied in workers' compensation law depends upon whether the alleged work-related injury is one for which the applicable workers' compensation statute provides a compensation remedy. *See, e.g., Snead v. Harbaugh*, 241 Va. 524, 404 S.E.2d 53, 54–55 (1991). In Rhode Island, the WCA provides benefits for an incapacitating "personal injury to an employee arising out of and in the course of his or her employment connected with and referable to his or her employment." Section 28–29–2(8)(i). As both sides note in their briefs, this Court repeatedly has held that there is no wholesale intentional-tort exception to the exclusive-remedy doctrine, as codified in § 28–29–20. Thus, the WCA provides the exclusive remedy for work-related personal injuries "under chapters 29—38 of this title [28]"—even if the injury-causing conduct of the alleged tortfeasor was intentional. *Diaz v. Darmet Corp.*, 694 A.2d 736, 737 (R.I.1997); *Cianci v. Nationwide Insurance Co.*, 659 A.2d 662, 670 (R.I.1995); *Coakley v. Aetna Bridge Co.*, 572 A.2d 295, 296 (R.I.1990); *Lopes v. G.T.E. Products Corp.*, 560 A.2d 949, 951 (R.I.1989). Therefore, defendants assert, excluding work-related defamation claims from the scope of the WCA's exclusive-remedy statute would be contrary to this Court's previous decisions subjecting claims for intentional infliction of emotional distress and invasion of privacy to this bar.[9] But work-related defa-

King Edward I, assisted by the royal justices, reaffirmed the Church's ecclesiastical jurisdiction to prosecute defamation actions "for punishment of sin."

5. *See* Bruce W. Sanford, *Libel & Privacy*, § 2.1 at 25 (2d ed.1996).

6. W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, § 111 at 773 (5th ed.1984).

7. W. Shakespeare, *Othello*, act 2, sc. 3. ("Reputation, reputation, reputation! O, I have lost

my reputation! I have lost the immortal part of myself, and what remains is bestial.").

8. W. Shakespeare, *King Richard II*, act 1, sc. 1.

9. The defendants rely heavily on *Manzi v. State*, 687 A.2d 461 (R.I.1997) (mem.). There, the WCA's exclusive-remedy statute barred the employee's invasion-of-privacy claims because the employee previously had settled a workers' compensation claim against

mation claims that cause mere intangible injuries, such as an injury to an employee's reputation, do not necessarily fall within the category of intentional torts for which workers' compensation statutes provide benefits.[10] *See, e.g., Foley v. Polaroid Corp.*, 381 Mass. 545, 413 N.E.2d 711 (1980). The WCA compensates employees for an earnings incapacity that results from tangible, work-related personal injuries, as well as from qualifying mental or psychic injuries. A year after this Court decided *Seitz v. L & R Industries*, 437 A.2d 1345 (1981) (holding that an office manager who suffered from the ordinary stress and rigors of moving her office from one city to another was not entitled to obtain benefits under the WCA for her alleged psychological injuries), the General Assembly enacted § 28–34–2(36), which defined a compensable mental injury under the WCA. Section 28–34–2(36) provides:

"The disablement of an employee resulting from mental injury caused or accompanied by identifiable physical trauma or from a mental injury caused by emotional stress resulting from a situation of greater dimensions than the

day-to-day emotional strain and tension which all employees encounter daily without serious mental injury shall be treated as an injury as defined in § 28–29–2 [ (8)(i) ]."[11]

Thus, the WCA now provides benefits for an employee's disabling mental injuries under the limited circumstances defined in § 28–34–2(36). Previously, this Court has held there is no intentional-tort exception to the WCA's exclusivity provision with respect to an employee's attempt to prosecute an independent action for intentional infliction of emotional distress in the workplace. *Cianci v. Nationwide Insurance Co.*, 659 A.2d 662 (R.I.1995). In responding to certain questions from the United States District Court for the District of Rhode Island, we concluded in *Cianci* that the WCA's exclusive-remedy provision applied to bar a lawsuit in which the employee sought damages for, *inter alia*, work-related injuries caused by the employer's alleged intentional infliction of emotional distress. *Id.* at 667–70. Later, relying on the *Cianci* decision, that same District Court interpreted this holding as one that was capable of being "distilled to the simple proposition that the WCA provides the

the employer for the same injuries that also were the subject of a civil action. The Court held that the employee's settlement under G.L.1956 § 28–33–25 fully and finally absolved and discharged the employer and insurer from all civil liability when Manzi signed the release in settlement of his claims. Here, however, Nassa never filed any WCA claim, much less did he sign a release under § 28–33–25 in favor of Hook or any of the other defendants. Moreover, *Manzi* did not involve a defamation claim or an alleged injury to the employee's reputation, as is the case here.

10. The elements of a cause of action for defamation are: (1) the utterance of a false and defamatory statement concerning another; (2) an unprivileged communication to a third party; (3) fault amounting to at least negligence; and (4) damages, unless the statement

is actionable irrespective of special harm. *See* Restatement (Second) *Torts* § 558 at 155 (1977). *See also Swerdlick v. Koch*, 721 A.2d 849, 860 (R.I.1998); *Healey v. New England Newspapers, Inc.*, 555 A.2d 321, 324 (R.I. 1989); *Lyons v. Rhode Island Public Employees Council 94*, 516 A.2d 1339, 1342 (R.I. 1986). Thus, to be actionable, a claim for defamation need not be based on the alleged tortfeasor's intentional misconduct. *See, e.g., Laudati v. Stea*, 44 R.I. 303, 117 A. 422 (1922) (defendant held liable for defamation for negligently publishing a circular that alleged wrongful appropriation of funds by "R. Laudati" instead of "N. Laudati").

11. The statute contains an apparent drafting error. General Laws 1956 § 28–34–2(36) refers to § 28–29–2(7) as defining "injury," when in fact § 28–29–2(8)(i) defines "injury."

exclusive remedy for claims against employers by employees who have suffered intentional infliction of emotional distress in the workplace." *Iacampo v. Hasbro, Inc.*, 929 F.Supp. 562, 582 (D.R.I.1996).

But when employees have joined claims for work-related intentional infliction of mental distress with those alleging defamation, other courts have drawn a key distinction between these two causes of action: they have held that the claims for intentional infliction of emotional distress are subject to the applicable exclusive-remedy statute for workers' compensation, but they have allowed the defamation claims to proceed in court because the latter seek compensation for injuries that are not covered by workers' compensation benefits. *See, e.g., Battista v. Chrysler Corp.*, 454 A.2d 286 (Del.Super.Ct.1982); *Foley v. Polaroid Corp.*, 381 Mass. 545, 413 N.E.2d 711 (1980); *Mounteer v. Utah Power & Light Co.*, 823 P.2d 1055 (Utah 1991).

▆▆ Recently, we have had occasion to recognize that certain work-related "intangible injuries which rob a person of dignity and self-esteem" do not fall within the WCA's exclusive-remedy provision. *See Folan v. State Department of Children, Youth, and Families*, 723 A.2d 287 (R.I. 1999). In *Folan*, we ruled that there are certain types of injuries, such as workplace discrimination, for which the WCA does not provide compensation because the injury is unrelated to the capacity or incapacity of the employee to perform employment-related duties. *Id.* at 292. Defamation, we hold, is another such injury: it "robs" employees of their good name and standing in the community by, for example, adversely affecting their fitness for the proper conduct of their lawful business without necessarily affecting their physical or mental capacity for work.[12] Thus, a defamed employee may possess the physical and mental capacity to work, yet still maintain a common-law defamation claim for his or her injured reputation. Here, as in *Folan*, the WCA was not enacted to redress such " 'intangible injuries' " to reputation, nor would it " 'serve as a deterrent' " in that regard. *Id.* at 291.

▆▆ In this case, defendants' alleged statements disparaged Nassa's reputation for honesty in his business dealings by suggesting that property owners had bribed him so that he would cause his employer, Hook, to enter into leases with them. If false, such statements would be "slander per se" because "[o]ne who publishes a slander that ascribes to another conduct * * * that would adversely affect his fitness for the proper conduct of his lawful business * * * is subject to liability without proof of special harm." Restatement (Second) *Torts* § 573 at 191–92 (1977). For slander per se, a plaintiff can establish liability without a showing of special or pecuniary damages because those damages are presumed. *See Henry v. Cherry & Webb*, 30 R.I. 13, 73 A. 97 (1909). Thus, in awarding compensatory damages for such falsehoods, a jury could compensate Nassa for the presumed impairment to his reputation and standing in the community—as well as for "the mental anguish and humiliation experienced as a result of the defamatory statements," *Bosler v. Sugarman*, 440 A.2d 129, 132 (R.I.1982)—with-

---

**12.** "Good name in man and woman, dear my lord,

Is the immediate jewel of their souls:
Who steals my purse steals trash; 'tis something, nothing;

'Twas mine, 'tis his, and has been slave to thousands;
But he that filches from me my good name
Robs me of that which not enriches him
And makes me poor indeed."
W. Shakespeare, Othello, act 3, sc. 3.

out Nassa having to prove any resultant earnings incapacity.

In sum, certain intangible injuries—such as damage to an employee's reputation or community standing—do not fall within the WCA's purview and no WCA remedy is available to compensate such an injured employee. Under these circumstances, the employee is free to bring a defamation suit at common law to redress such wrongs.

## Conclusion

Under § 28–29–20, the WCA's exclusive-remedy provision bars an independent lawsuit only when an employee suffers "an injury *under* chapters 29—38 of this title." (Emphasis added.) Injury to an employee's reputation, however, is not one of the injuries for which compensation is available "under chapters 29—38 of this title [28]." Section 28–29–20. Thus, the WCA does not bar a defamed employee from prosecuting a common-law claim seeking damages for an alleged injury to his or her reputation. For these reasons, we sustain Nassa's appeal, vacate the dismissal order and Rule 54(b) judgment of the Superior Court, and remand the case for further proceedings consistent with this opinion.