**Leisa YOUNG, in her capacity as Administratrix of the Estate of Cornel Young, Jr.**

v.

**CITY OF PROVIDENCE, et al.**

**No. CR 01–288ML.**

United States District Court,
D. Rhode Island.

Feb. 11, 2004.

---

4. These statutes also appear to be modeled on the UFTA, and are therefore nearly identical

to the RIUFTA.

Barry Scheck, Nicholas Brustin, Cochran, Neufeld & Scheck, LLP, New York City, Robert B. Mann, Esq., Mann & Mitchell, Providence, RI, for Plaintiffs.

Joseph F. Penza, Jr., Olenn & Penza, Warwick, Kevin F. McHugh, City of Providence Law Department, Providence, RI, for Defendants.

## MEMORANDUM AND ORDER

LISI, District Judge.

On November 5, 2003, this Court ruled on several motions. The Court's rulings disposed of all of plaintiff's claims. At that time the Court informed the parties that a written decision setting forth the basis for the Court's rulings would be issued at a later date. This memorandum delineates the legal analysis for the Court's November 5, 2003 rulings.

### I. *Background and Travel.*

This action results from the fatal shooting of plaintiff's son, Cornel Young, Jr. ("Young" or "the decedent"), an African-American Providence police officer, on January 28, 2000. The decedent was shot outside Fidas Restaurant in Providence, Rhode Island, by two other Providence police officers, Carlos Saraiva ("Saraiva") and Michael Solitro ("Solitro"). At the time of the incident, the decedent, who was off-duty and clad in plainclothes, had drawn his weapon, in an apparent attempt to assist Saraiva and Solitro in the apprehension of an armed suspect, Aldrin Diaz ("Diaz"). Neither Solitro nor Saraiva recognized the decedent before they shot him. At trial, both Solitro and Saraiva testified that they mistakenly believed that the decedent was a civilian who was about to shoot Diaz.

The plaintiff, Leisa Young, in her capacity as administratrix of the estate of Cornel Young, Jr., seeks redress pursuant to 42 U.S.C. § 1983 for the alleged deprivation of decedent's Fourth Amendment right to be free from an unreasonable seizure of his person.[1] In substance, plaintiff's federal claims fall into two categories. First, plaintiff alleges that Saraiva's and Solitro's actions on January 28, 2000, amounted to an unreasonable use of force in violation of Cornel Young, Jr.'s Fourth Amendment rights. Second, plaintiff asserts that decedent's death was the result of the failure of the City of Providence ("the City") and other named defendants to properly screen, hire, train, discipline and supervise the City's police officers.

In addition to her federal claims, plaintiff seeks damages pursuant to Rhode Island's "wrongful death" act and pursuant

---

1. In her first amended complaint, the plaintiff purports to seek redress for an alleged violation of decedent's Fourteenth Amendment right to equal protection of the laws. At hearing, on November 5, 2003, plaintiff, through counsel advised the Court that she was not asserting an "equal protection" or "a race-based" claim.

to state law tort theories of assault and battery, gross negligence, negligence and respondeat superior.

The plaintiff filed the instant action on June 7, 2001. Initially, plaintiff named the City, Solitro and Saraiva as defendants. In addition to bringing suit in her capacity as administratrix of decedent's estate, the plaintiff purported to maintain a § 1983 claim in her individual capacity for alleged interference with her "federally protected liberty and privacy interest ... to maintain a stable family relationship free of intervention from the State." Initial Complaint, ¶ 83. Moreover, plaintiff, individually, sought recovery in tort for defendants' "reckless and negligent" infliction of emotional distress. *Id.* ¶ 105.

The City filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and the Court conducted a hearing on the matter on February 12, 2002. The Court granted the City's motion to dismiss all of the claims asserted by plaintiff in her individual capacity. The Court denied the motion to dismiss as it pertained to the claims asserted by plaintiff in her capacity as administratrix. On December 5, 2002, the plaintiff was granted leave to amend her complaint to add Urbano Prignano, Jr. ("Prignano"), Richard Sullivan ("Sullivan"), John Ryan ("Ryan") and Kenneth Cohen ("Cohen"), in their individual capacities, as defendants. At all relevant times, including during the training academies attended by Young, Saraiva and Solitro, and through January 28, 2000, Prignano was the City's police chief and, as such, is alleged to have had supervisory responsibility for the investigation and selection of academy candidates, and the training and disciplining of officers. Sullivan was a major with the department and is alleged to

have had supervisory responsibility for the screening and selection of academy candidates and for the disciplining of officers. Ryan was the director of the 57th training academy which was attended by Young and Saraiva. Cohen was the director of the 58th training academy, which Solitro attended. As directors of the academy, Ryan and Cohen allegedly bore supervisory responsibility for the training of candidates at the academy and for the on-going training of Providence police officers. The plaintiff filed her first amended complaint on December 16, 2002.[2]

On August 13, 2003, Solitro and Saraiva filed a motion for a separate trial pursuant to Fed.R.Civ.P. 42(b). Specifically, Solitro and Saraiva sought to have the plaintiff's claims against them severed from the plaintiff's claims against the other named defendants. The Court scheduled a hearing on the matter and certain other pending motions for September 5, 2003. The plaintiff filed an objection to Solitro's and Saraiva's bifurcation motion.

On September 4, 2003, the day before the scheduled hearing on the bifurcation motion, plaintiff filed a motion for leave to file a motion "out-of-time." Specifically, plaintiff sought leave to file a motion to voluntarily dismiss, with prejudice, all of the claims which she had asserted against Saraiva and Solitro in their individual capacities. The proposed motion for voluntary dismissal was conditioned, *inter alia,* on Solitro's and Saraiva's withdrawal of their pending bifurcation motion.

On September 5, 2003, the Court granted plaintiff's motion for leave to file her motion to voluntarily dismiss Solitro and Saraiva out-of-time.[3] The Court set the motion for voluntary dismissal down for hearing for September 12, 2003, and con-

---

2. Unless otherwise specifically indicated, all references to the "complaint" or "amended complaint", are to plaintiff's first amended complaint.

3. The motion for voluntary dismissal, in the same form as proposed, was filed after the hearing on September 5, 2003. Plaintiff's Motion to Dismiss, Dkt. 257.

tinued the hearing on the bifurcation motion until that same date. In the interim, on September 8, 2003, the City, Prignano, Ryan, Sullivan and Cohen, formally joined in the bifurcation motion. The City also filed an objection to the plaintiff's motion to voluntarily dismiss.

On September 12, 2003, the Court conducted a hearing on the matter and granted the plaintiff's motion for voluntary dismissal.[4] Accordingly, Count I of the amended complaint, which was directed against Solitro and Saraiva in their individual capacities for their alleged violation of decedent's constitutional rights was dismissed in its entirety. Count II, which asserted a claim of supervisory liability under § 1983 against Saraiva, Ryan, Cohen, Prignano and Sullivan, was dismissed to the extent that the count contained allegations directed against Saraiva.[5] Count VI, which alleged that Solitro and Saraiva were negligent and "grossly negligent" in shooting the decedent, was dismissed in its entirety. Counts VII and IX were dismissed to the extent that the state law claims alleged in those counts were directed against Solitro and/or Saraiva.

The Court then proceeded to hear oral argument on the bifurcation issue. After hearing argument, the Court, exercising its discretion pursuant to Fed.R.Civ.P. 42(b), ordered that the matter be bifurcated for trial. Specifically, the first phase of the trial would require the jury to determine whether Solitro and/or Saraiva had violated decedent's Fourth Amendment right to be free from an unreasonable seizure of his person. All remaining issues, including the municipal and supervisory liability claims and plaintiff's state law claims, were reserved for determination following completion of the first phase. All phases were to be tried before the same jury. The reasons for the Court's bifurcation order were fully set forth on the record on September 12, 2003, and need not be restated here.

A jury was empaneled on October 7, 2003. The trial's first phase commenced on October 8, 2003. Pursuant to the Court's bifurcation order, presentation of evidence during the first phase of the proceeding was limited to that which was relevant to the jury's determination of whether Solitro and/or Saraiva had violated Cornel Young, Jr.'s Fourth Amendment right to be free from an unreasonable seizure of his person when they shot and killed him on January 28, 2000.

At the conclusion of plaintiff's presentation of her case in phase one, the defendants moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 50. The Court reserved determination of the motion. Following the close of all evidence, the defendants renewed their Rule 50 motion and the Court again reserved decision.

At the conclusion of the trial's first phase, the jury was instructed with regard to the law applicable to its determination of whether Solitro and/or Saraiva had violated the decedent's Fourth Amendment right to be free from an unreasonable seizure of his person. Two special interrogatories were propounded to the jury:

1. Do you find by a fair preponderance of the evidence that Carlos Saraiva shot Cornel Young, Jr., in violation of Mr. Young's constitutional rights?

2. Do you find by a fair preponderance of the evidence that Michael Solitro

---

**4.** The order granting the motion was entered on September 18, 2003.

**5.** Count II alleged, *inter alia*, that "Saraiva acted with reckless disregard and deliberate indifference in the training and supervision of

defendant Solitro on January 28, 2000, thereby causing the assault, shooting, injury, and death of Cornel Young, Jr., in violation of 42 U.S.C. § 1983." First Amended Complaint, ¶ 114.

shot Cornel Young, Jr., in violation of Mr. Young's constitutional rights?

On October 31, 2003, following deliberation, the jury returned its unanimous responses to each question. The jury responded in the negative as to special interrogatory number one, which pertained to Saraiva. With regard to interrogatory number two, the jury determined that Solitro had violated Cornel Young Jr.'s constitutional rights.

On November 3, 2003, the Court conducted a hearing on motions for summary judgment that had been filed by defendants the City, Ryan and Cohen.[6] In their joint motion, Ryan and Cohen sought entry of summary judgment as to all claims directed against them, specifically, the claims asserted in Counts II, V, VII and IX. The City sought summary judgment as to the federal claims asserted against it in Counts III and IV of the amended complaint. Although these motions had been filed prior to the commencement of trial, they had been held in abeyance by the Court pending completion of the trial's first phase. All of plaintiff's claims against Ryan and Cohen, as well as the claims asserted by plaintiff against the City (including Prignano in his official capacity) in Counts III and IV, were matters which had been reserved for determination in phase two of the trial.

During the November 3, 2003, hearing, the Court also heard argument on the combined motion of the City, Prignano and Sullivan for: (1) reconsideration of the Court's February 12, 2002, order denying portions of the City's motion to dismiss;

and (2) judgment on the pleadings as to Counts V, VII, VIII and IX of plaintiff's first amended complaint. The combined motion had been filed on August 29, 2003, and plaintiff had filed an objection. Counts V, VII, VIII and IX set forth state-law based claims and, accordingly, were not before the jury for determination during the trial's first phase. Counts V, VIII and IX were the subject of the City's prior motion to dismiss, which had been denied by the Court on February 12, 2002.

At the hearing, the Court informed counsel that it was reconsidering an earlier ruling made by the Court as to the continued viability of a portion of Count IX (the wrongful-death claim). Previously, in ruling on the motion the summary judgment filed by Solitro and Saraiva, the Court had denied the motion as to that portion of Count IX which asserted a claim pursuant to R.I. Gen. Laws §§ 10–7–1 through 10–7–4. Memorandum and Order (7/1/03) at 14–15. The Court had based that aspect of its decision on its conclusion that Rhode Island's "injured-on-duty" ("IOD") statute, R.I. Gen. Laws § 45–19–1, et seq., did not bar that component of plaintiff's wrongful-death claim.[7] Id. Subsequent to the issuance of its July 1, 2003, memorandum and order, and upon further consideration of applicable state law, the Court became concerned that its earlier determination that a portion of Count IX was not precluded by the IOD statute may have been erroneous. Accordingly, during the November 3, 2003, hearing, the Court directed the parties' attention to pertinent Rhode Island case law and invited counsel to address the issue further at a hearing to be conducted on November 5, 2003.

---

**6.** Both motions had been filed in June 2003. However, because plaintiff was granted two extensions for a response to the City's motion and one extension for a response to Ryan's and Cohen's motion, the summary judgment motions did not become ripe for determination until August 2003.

**7.** In its July 1, 2003, memorandum and order, the Court granted Saraiva's and Solitro's motion for summary judgment as to that portion of Count IX that asserted a claim under R.I. Gen Laws §§ 10–7–5 through 10–7–8.

The Court reconvened the hearing on November 5, 2003. At that time, the parties were heard on their respective positions with regard to whether the IOD statute precluded all claims made in Count IX. The Court then ruled on the pending motions and, in consideration of those rulings, engaged in a *sua sponte* reconsideration of a motion for summary judgment that had been filed by Prignano and Sullivan.[8] Prignano's and Sullivan's motion pertained to the claims asserted against them by plaintiff in Count II of the amended complaint. Previously, on May 30, 2003, the Court had denied that motion in its entirety as it pertained to the claims directed against Prignano in Count II. Concerning the claims asserted against Sullivan, the Court had granted the motion as it pertained to Sullivan's investigation of Solitro's 1989 assault on Gregorio Small ("Small"), an off-duty Providence police officer and denied the motion as to the remaining claims directed against Sullivan in Count II.[9]

At the November 5, 2003 hearing, the Court made the following rulings.

First, the Court denied defendants' Rule 50 motions.

Second, because the jury determined that Saraiva had not violated Cornel Young, Jr.'s, Fourth Amendment right to be free from an unreasonable seizure, all supervisory and municipal liability claims set forth in Counts II, III and IV that were premised on Saraiva's actions were dismissed as a matter of law as to all defendants.

Third, all supervisory and municipal liability claims that were related to Solitro's unconstitutional conduct also failed as a matter of law and, therefore, were dismissed. This included those claims asserted in Counts II, III and IV of plaintiff's amended complaint that were the subject of the motions for summary judgment filed by the City (Counts III and IV), and Ryan, Cohen, Prignano and Sullivan (Count II).

Fourth, as set forth specifically in Count II and incorporated by reference in Counts III and IV, plaintiff premised her § 1983 claims, in part, on an assertion that the decedent had not been adequately trained with regard to off-duty action. Because the decedent did not possess a constitutional right to such training, plaintiff's related claims failed as a matter of law and were dismissed.

Fifth, applying Rhode Island law, the Court concluded that all claims made in Count IX (the "wrongful death" claim) were precluded by the IOD statute. This conclusion was contrary to the Court's earlier determination, made in ruling on Solitro's and Saraiva's motion for summary judgment, that a portion of Count IX, specifically the component of plaintiff's claim brought pursuant to R.I. Gen. Laws §§ 10–7–1 through 10–7–4, was not so precluded. Thus, that portion of the Court's memorandum and order entered on July 1, 2003, in which the Court denied in part Saraiva's and Solitro's motion for summary judgment as to Count IX of plaintiff's amended complaint was withdrawn. Order (11/6/03), Dkt. 352. In view of the Court's reconsideration of the matter, Count IX was dismissed in its entirety as to all defendants.

---

8. Reconsideration was appropriate in view of the Court's determination that none of the claims asserted against Ryan and Cohen in Count II, or against the City in Counts III and IV, remained viable. The Court's analysis upon reconsideration is explained in section II.B.3., *infra.*

9. In accordance with *its* reconsideration, the Court issued an order withdrawing the May 30, 2003, memorandum and order to the extent that the May 30 order had denied Prignano's and Sullivan's motion for summary judgment. Order (11/6/03), Dkt. 352.

Additionally, to the extent not encompassed by the above-enumerated rulings, and although not specifically addressed on the record on November 5, 2003, the combined motion of the City, Sullivan and Prignano for reconsideration and for judgment on the pleadings is granted. That motion pertains to Counts V, VII, VIII and IX.

The Court now sets forth the legal analysis supporting each of these rulings.

## II. *Discussion.*

### A. *The Rule 50 motions.*

In deciding a motion for judgment as a matter of law under Fed.R.Civ.P. 50, the Court must examine the evidence and the inferences drawn therefrom in the light most favorable to the nonmovant. *E.g., Espada v. Lugo,* 312 F.3d 1, 2 (1st Cir. 2002). The Court does not engage in credibility determinations or weigh the evidence. *E.g., Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *White v. N.H. Dep't of Corrs.,* 221 F.3d 254, 259 (1st Cir.2000) (quoting *Katz v. City Metal Co.,* 87 F.3d 26, 28 (1st Cir.1996)). The motion may be granted only if the evidence would not permit a reasonable jury to find in favor of the nonmovant. *E.g., Espada,* 312 F.3d at 2.

■ The claim before the jury in the first phase of these proceedings was whether the actions of Solitro and/or Saraiva in shooting Cornel Young, Jr., on January 28, 2000, were violative of decedent's Fourth Amendment right to be free from an unreasonable seizure of his person. In order to find that such a violation had occurred, plaintiff had to prove that Solitro's and/or Saraiva's actions were not "objectively reasonable." *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104

L.Ed.2d 443 (1989). The reasonableness of the officers' actions is not examined only at the moment of the shooting. *St. Hilaire v. City of Laconia,* 71 F.3d 20, 26 (1st Cir.1995). Rather, the actions leading up to the seizure are also examined. *Id.* The officers' pre-confrontation actions themselves may serve as the unreasonable conduct upon which a § 1983 claim is based. *Napier v. Town of Windham,* 187 F.3d 177, 188 (1st Cir.1999).

■ The evidence presented by the plaintiff included Diaz's testimony that when he last saw Young, Young was not pointing his gun at Diaz. Also, plaintiff presented evidence that Saraiva was acting as Solitro's training officer on January 28, 2000; that Saraiva was the senior officer of the two; that Saraiva did not give any direction to Solitro to maintain "cover" [10]; and that Solitro broke cover, thereby creating the exigency that forced Solitro and Saraiva to fire at Young. Also, plaintiff presented the expert opinion of Dr. James Fyfe who testified that Saraiva's failure to give direction to Solitro was in violation of nationally approved standards and that Solitro's leaving cover was also violative of national standards. From these facts the jury could reasonably find that plaintiff had made out each element of her claim.

Therefore, for the above reasons, the Court denied the Rule 50 motion made by the City, Prignano, Sullivan, Ryan and Cohen at the conclusion of plaintiff's case. For the same reasons, defendants' renewed motion, made at the conclusion of all the evidence was also denied.

### B. *The Motions for Summary Judgment.*

Ryan and Cohen filed a motion for entry of summary judgment in their favor as to all claims asserted against them by plain-

---

**10.** At trial, "cover" was defined by plaintiff's expert, Dr. James Fyfe, as a position behind "something that would protect an officer from a bullet. It's something heavy that would stop a bullet that would be directed at an officer."

tiff in her amended complaint, specifically those set forth in Counts II, V, VII and IX. The City sought entry of summary judgment in its favor as to Counts III and IV of the amended complaint. In view of its determination of Ryan's, Cohen's and the City's motions for summary judgment, the Court engaged in a *sua sponte* reconsideration of Prignano's and Sullivan's motion for summary judgment as to Count II.

### 1. *Applicable standard.*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" if the pertinent evidence is such that a rational fact finder could render a verdict in favor of either party and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law." *Nat'l Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir.1995) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The moving party bears the burden of demonstrating that no genuine issue of material fact exists. *Id.* Once the movant has made the requisite showing, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "Nor may the court accept the nonmovant's subjective characterizations of events, unless the underlying events themselves are revealed." *Simas v. First Citizens' Fed. Credit Union,* 170 F.3d 37, 50 (1st Cir. 1999) (citation omitted).

In deciding a motion for summary judgment, this Court's task is to "determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Barreto–Rivera v. Medina–Vargas,* 168 F.3d 42, 45 (1st Cir.1999) (quoting *Liberty Lobby,* 477 U.S. at 251–52, 106 S.Ct. 2505). The Court views all facts and draws all reasonable inferences in a light that is most favorable to the nonmoving party. *See Reich v. John Alden Life Ins. Co.,* 126 F.3d 1, 6 (1st Cir.1997).

Local Rule 12.1 requires that the party seeking summary judgment file "a concise statement of all material facts as to which he contends there is no genuine issue necessary to be litigated." D.R.I. Loc. R. 12.1(a)(1). In response, the party opposing the motion shall submit "a concise statement of all material facts as to which he contends there is a genuine issue necessary to be litigated." D.R.I. Loc. R. 12.1(a)(2). Moreover, in deciding the motion for summary judgment:

> [T]he court may assume that the facts as claimed by the moving party are admitted to exist without controversy except as and to the extent that such facts are controverted by affidavit filed in opposition to the motion, or by other evidentiary materials which the court may consider under Rule 56 of the Federal Rules of Civil Procedure.

D.R.I. Loc. R. 12.1(d). A party who ignores Rule 12.1 does so at his own peril. *See Ruiz Rivera v. Riley,* 209 F.3d 24, 28 (1st Cir.2000).

### 2. *Ryan's and Cohen's Motion for Summary Judgment as to Count II; the City's Motion for Summary Judgment as to Counts III and IV.*[11]

The § 1983 claim set forth in Count II is premised on a theory of supervisory liabili-

---

**11.** Ryan's and Cohen's motion for summary          judgment as to Counts V, VII and IX is ad-

ty. As directed against Ryan and Cohen, the allegations of this count are that they acted with reckless disregard and deliberate indifference in failing to adequately train Solitro, Young and Saraiva concerning the use of lethal force, off-duty action and the danger of misidentification and shooting of non-uniformed African–American and Hispanic police officers, and that such conduct caused the fatal shooting of Cornel Young, Jr.

In Counts III and IV, plaintiff alleges that the constitutional injury sustained by decedent on January 28, 2000, was the result of the City's customs, policies and/or practices of failing to properly screen, hire, train, discipline and supervise its police officers.[12] As set forth more fully below, the plaintiff's screening and hiring claim is premised on an assertion that Solitro was unfit to serve as a police officer. The failure-to-discipline claim pertains to the City's alleged failure to appropriately remediate Saraiva in connection with an incident occurring on September 18, 1999. With regard to training, the plaintiff contends that Young, Saraiva and Solitro were inadequately trained concerning off-duty conduct and responsibilities; the use of deadly force; and avoiding the misidentification and wrongful shooting of off-duty and plainclothes African–American and Hispanic police officers.[13].

(a). *Saraiva's Discipline and Training.*

■ In view of the jury's determination that Saraiva did not violate the decedent's Fourth Amendment right to be free from an unreasonable seizure of his person, Ryan and Cohen are entitled to entry of

judgment in their favor on Count II to the extent that the claim asserted against them in this count relates to the adequacy of Saraiva's training.[14] Similarly, the City is entitled to entry of judgment on Counts III and IV to the extent the claims set forth in these two counts relate to the adequacy of the City's discipline and training of Saraiva. This result is mandated by the Supreme Court's holding in *City of Los Angeles v. Heller*, 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986):

In *Heller*, the plaintiff brought a § 1983 action for damages against the municipality itself, individual members of the city's police commission and two city police officers. The plaintiff alleged that the officers had arrested him without probable cause and that they had employed excessive force in making the arrest. The district court entered summary judgment in favor of one of the two officers. At the conclusion of the first phase of a bifurcated trial, the jury returned a verdict for the remaining police officer. The district court then dismissed the claims asserted against the other defendants for the reason that the jury's exoneration of the remaining officer eliminated any basis for plaintiff's assertions of liability against the city or members of its police commission.

The Supreme Court upheld the district court's dismissal of the claims asserted against the city and the commission members. The jury's determination that the individual officer had not violated plaintiff's constitutional rights was "conclusive not only as to [the individual officer], but

---

dressed in Section II.C., *infra.*

**12.** Count IV is asserted against Prignano in his official capacity as the City's final policymaker and as such, is a claim against the City which is subsumed into Count III.

**13.** The failure to supervise allegation is incorporated in the discipline and training claims.

**14.** It is unclear what responsibility, if any, Cohen bore for Saraiva's training. Saraiva attended the 57th training academy. Ryan was the director of the 57th academy. Cohen was the director of the 58th academy.

also as to the city and its Police Commission." *Id.* at 799, 106 S.Ct. 1571.

> [The city and its commission members] were sued only because they were thought legally responsible for [the officer's] actions; if the latter inflicted no constitutional injury on [plaintiff], it is inconceivable that [the city and its commission members] could be liable to [plaintiff].
>
> .  .  .  .  .
>
> [N]either *Monell* ... nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm. If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.

*Id.* (citing *Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)) (emphasis in original); *accord Jarrett v. Town of Yarmouth*, 331 F.3d 140 (1st Cir.2003); *Hayden v. Grayson*, 134 F.3d 449 (1st Cir.1998).

### (b). *Solitro's Training.*

The gravamen of the allegations set forth against Ryan and Cohen in Count II and against the City in Counts III and IV as the allegations pertain to Solitro's training are that defendants failed to provide Solitro with appropriate training concerning the use of lethal force and the risks related to off-duty police action, including the danger of misidentification and shooting of non-uniformed African–American and Hispanic police officers.

The jury determined that Solitro violated decedent's Fourth Amendment right to be free from an unreasonable seizure of his person. Because plaintiff has voluntarily dismissed, with prejudice, all of her claims against Solitro and Saraiva in their individual capacities,[15] she is precluded from recovering monetary damages from Solitro under § 1983. The jury's determination satisfies only one element of plaintiff's supervisory and municipal liability claims.

■ In addition to proving that he has suffered a violation of a constitutional right, a plaintiff seeking to hold a municipality liable under § 1983 must identify a municipal policy or custom that caused plaintiff's injury. *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "[A] municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of County Comm'rs of Bryan County, supra* (citing *Monell*, 436 U.S. at 691, 98 S.Ct. 2018). The plaintiff must "demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* at 404, 117 S.Ct. 1382.

■ Similarly, a supervisor cannot be held liable under § 1983 for the acts of a subordinate on a respondeat superior theory. *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Hegarty v. Somerset County*, 53 F.3d 1367, 1380 (1st Cir.1995). Rather, supervisory liability must be based on the

---

**15.** As noted on the record on November 5, 2003, the Court will not comment on the wisdom of that choice.

supervisor's own acts or omissions. *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994). The plaintiff must show that the supervisor's behavior demonstrates deliberate indifference to conduct that is violative of a plaintiff's constitutional rights. *Id.* at 582 (citations omitted). " '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. at 410, 117 S.Ct. 1382.

> [A] supervisor cannot be liable for merely negligent acts. Rather, a supervisor's acts or omissions must amount to a reckless or callous indifference to the constitutional rights of others... "An official displays such reckless or callous indifference when it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights."

*Febus–Rodriguez v. Betancourt–Lebron*, 14 F.3d 87, 92 (1st Cir.1994) (quoting *Germany v. Vance*, 868 F.2d 9, 18 (1st Cir. 1989)) (internal citations and footnote omitted).

Moreover, the plaintiff must prove the existence of a causal link between the supervisor's behavior and the constitutional injury.

> Deliberate indifference ... is not the be-all and the end-all of a section 1983 claim premised on supervisory liability... [T]here is a causation element as well.
>
> To succeed on a supervisory liability claim, a plaintiff not only must show deliberate indifference or its equivalent, but also must affirmatively connect the supervisor's conduct to the subordinate's violative act or omission.

*Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d at 582.

"The liability criteria for failure to train claims are exceptionally stringent." *Hayden v. Grayson*, 134 F.3d at 456 (citing *City of Canton v. Harris*, 489 U.S. at 388–89, 109 S.Ct. 1197). "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. at 388, 109 S.Ct. 1197.

Ryan was the director of the 57th training academy, the session attended by Young and Saraiva. Cohen's and Ryan's Statement of Undisputed Facts (6/17/03), ¶ 2. Cohen was the director of the 58th academy, which Solitro attended. *Id.* The plaintiff contends that, as the director of the training academy during Solitro's attendance, Cohen had supervisory responsibility for Solitro's training. It is unclear from the face of the amended complaint whether plaintiff alleges that Ryan bore any responsibility for Solitro's training. The complaint broadly asserts that Prignano, Ryan and Cohen had a responsibility to train recruits and police officers, including Saraiva, Solitro and the decedent. *E.g., id.,* ¶¶ 92, 93, 96, 113. However, the complaint is devoid of any specific allegations as to Ryan's responsibilities concerning Solitro's training. For purposes of the instant discussion, the Court treats the claim set forth in Count II regarding Solitro's training as having been asserted against both Ryan and Cohen.

It is undisputed that Young, Saraiva and Solitro were all members of the Providence Police Department on January 28, 2000, and that all three had attended the training academy. Cohen's and Ryan's Statement of Undisputed Facts (6/17/03), ¶¶ 1, 2. Moreover, it is undisputed that prior to Young's death there had been no other incidents in which a Providence police officer had been shot by a fellow offi-

cer. City's Statement of Undisputed Facts (6/16/03), ¶ 1.

Additionally, in support of their motions for summary judgment, the City, Ryan and Cohen have proffered the following factual assertions concerning the training provided to Providence police officers, including Solitro.

The 57th and 58th academies included 1000 hours of training over approximately 25 weeks. Cohen's and Ryan's Statement of Undisputed Facts, ¶ 17. At the academy, recruits received training regarding the use of deadly force including their determinations of whether to use such force in various situations, off-duty response, and identification of non-uniformed law enforcement officers in various response situations. City's Statement of Undisputed Facts, ¶¶ 6–7. Cohen's and Ryan's Statement of Undisputed Facts, ¶¶ 17, 18, 22–30.

Recruits received "shoot/no-shoot" training at a firing range. City's Statement of Undisputed Facts, ¶ 6. At the firing range, different paper "cut-outs" were positioned in various ways, including behind other targets. *Id.* The "cut-outs" included a plainclothes officer with a badge. *Id.* Officers were required to make a determination as to whether to fire at the target. *Id.*

Additionally, over a two-week period, each recruit participated in 14 different role-playing scenarios at Camp Varnum, which had been set up to resemble a small city. *Id.*; Cohen's and Ryan's Statement of Undisputed Facts, ¶ 26. Recruits were "dispatched" to the various situations. Cohen's and Ryan's Statement of Undisputed Facts, ¶ 26. The scenarios required recruits to make shoot/no-shoot determinations *Id.*, ¶¶ 26–29; City's Statement of Undisputed Facts, ¶ 6. A number of the scenarios involved off-duty or plainclothes officers. City's Statement of Undisputed Facts, ¶ 6; Cohen's and Ryan's Statement

of Undisputed Facts, ¶¶ 26–29. The scenarios also involved the use of "cover" and the giving of appropriate commands when confronted with an armed suspect. Cohen's and Ryan's Statement of Undisputed Facts, ¶¶ 29. A critiquing period followed each role-playing session. City's Statement of Undisputed Facts, ¶ 6; Cohen's and Ryan's Statement of Undisputed Facts, ¶¶ 30, 31. The critique included discussion of whether the off-duty officer acted appropriately. City's Statement of Undisputed Facts, ¶ 6

Recruits were instructed regarding how off-duty officers were to conduct themselves in law enforcement situations. Cohen's and Ryan's Statement of Undisputed Facts, ¶¶ 31, 34, 35, 41. City's Statement of Undisputed Facts, ¶ 6. Specifically, recruits were instructed, *inter alia,* to display their badge, to identify themselves as police officers, to obey the commands of uniformed officers, and not to make any sudden movements. Cohen's and Ryan's Statement of Undisputed Facts, ¶¶ 32, 34, 41; City's Statement of Undisputed Facts, ¶ 6. Also, recruits were trained concerning how to handle on-duty encounters with non-uniformed, armed subjects identifying themselves as law enforcement officers. Cohen's and Ryan's Statement of Undisputed Facts, ¶ 29. In such situations, recruits were instructed to order the subject to put his weapon down and then to confirm his credentials. *Id.;* City's Statement of Undisputed Facts, ¶ 6.

Providence police officers also received post-Academy, "in-service" training pertaining to shoot/no-shoot determinations, "cover", the use of verbal commands, and off-duty situations. City's Statement of Undisputed Facts, ¶¶ 6–7; Cohen's and Ryan's Statement of Undisputed Facts, ¶¶ 22–25 Such training included the use of a computer simulator ("Range 2000") and paint ball training, both of which required

officers to respond to various scenarios. Cohen's and Ryan's Statement of Undisputed Facts, ¶¶ 22–25. City's Statement of Undisputed Facts, ¶¶ 6–7. Solitro received Range 2000 training. Cohen's and Ryan's Statement of Undisputed Facts, ¶ 23. Range 2000 training required shoot/no-shoot determinations, issuing verbal commands and taking of cover. *Id.*, ¶ 24.

The plaintiff generally disputes the veracity of defendants' factual assertions concerning the type and degree of training provided. However, she has failed to set forth with the requisite specificity facts sufficient to support a jury determination: that training inadequacies existed; that defendants were callously or recklessly indifferent to the inadequacies and the risks they posed to citizens; and, that a causal connection existed between the training inadequacies and Solitro's unconstitutional conduct on January 28, 2000. *See Triangle Trading Co., Inc. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir.1999) (to defeat defendant's motion for summary judgment, plaintiff must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue") (citation and internal quotations omitted).

For example, in response to defendants' proffer of evidence regarding deadly force training, plaintiff relies on the absence of written documentation to confirm that Solitro received such training. Pl.'s Response to City's [Un]disputed Material Facts, ¶¶ 6–7 (8/18/03); Pl.'s Response to Cohen's and Ryan's Statement of [Un]disputed Facts (7/28/03), ¶¶ 17–18, 22–25, 26–31.

■ Also, in support of her claim of inadequate training, plaintiff proffers a written report allegedly prepared by an expert witness, Dr. James Fyfe. Dr. Fyfe's report is referenced in plaintiff's Rule 12.1 statements and plaintiff has appended a portion of the report to her memorandum in opposition to Prignano's and Sullivan's motion for summary judgment. In his report, Dr. Fyfe opines, *inter alia,* that Young's death was a result of defendants' inadequate training practices. Fyfe Report, ¶¶ 6, 14, 15. However, plaintiff did not, at any time in these proceedings, submit to the Court an affidavit or any other sworn testimony in which Dr. Fyfe has affirmed the written report under oath. Thus, the report is not of sufficient evidentiary quality to sustain plaintiff's objections to defendants' motions for summary judgment. *See* Fed.R.Civ.P. 56(c) (providing that summary judgment shall be granted "if the *pleadings, depositions, answers to interrogatories,* and *admissions* on file, together with the *affidavits,* if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.") (emphasis added); *Triangle Trading Co., Inc. v. Robroy Indust., Inc, supra.*

In any event, the report itself does not delineate with any specificity the areas in which Dr. Fyfe believes Solitro's training was deficient and does not provide the factual underpinnings for Dr. Fyfe's opinion.[16] The plaintiff has merely provided the Court with conclusory statements that are devoid of evidentiary support.

■ Further, plaintiff has not proffered any evidence of deliberate indifference on the part of defendants. Although plaintiff has set forth facts demonstrating that some members of the police department,

---

**16.** Although the plaintiff has proffered some evidence concerning inadequacies in off-duty response training, such evidence is not relevant to a determination of whether Solitro's deficient training was a cause of his violation of decedent's Fourth Amendment rights. There is no dispute that Solitro was on-duty at the time of the incident. Accordingly, whether Solitro was properly trained concerning his off-duty responsibilities is of no consequence.

including Ryan, were aware of the risk of "friendly-fire" incidents, there is no evidence that defendants knew or reasonably should have known that there were deficiencies in the Providence police department's training program in this area. In fact, as set forth above, it is undisputed that prior to the January 28, 2000 incident, there had been no "friendly-fire" incidents in the City.

Moreover, the plaintiff has not proffered any evidence of an affirmative link between any alleged training deficiencies and Solitro's unconstitutional conduct on January 28, 2000. The plaintiff has not supplied the factual premise for Dr. Fyfe's opinion that a causal connection existed. In fact, Dr. Fyfe's opinions concerning a causal connection consist entirely of conclusory statements that Young's death was the "direct and predictable" result of the defendants failure to adequately train and supervise its officers. Fyfe Report, ¶¶ 14, 15.

Accordingly, for the above reasons, defendants Ryan, Cohen and the City are entitled to summary judgment on plaintiff's § 1983 claims to the extent such claims are premised on their alleged failure to properly train Solitro.

(c). *Solitro's Screening and Hiring.*

In Counts III and IV, the plaintiff seeks to hold the City liable under § 1983 for Solitro's unconstitutional conduct based upon the municipality's decision to employ him as a police officer. For the reasons that follow, the City is entitled to summary judgment as to this aspect of Counts III and IV.

The gravamen of this component of plaintiff's claim against the City is that Solitro was unfit to serve as a police officer and that this "fact" was evinced both by information obtainable in the course of an adequate background investigation and by information actually garnered in the course of the investigation conducted. The plaintiff asserts, *inter alia,* that Oscar Perez ("Perez"), the detective who was assigned the responsibility for conducting Solitro's background investigation, was not adequately trained and supervised, and that, as a result, certain negative information regarding Solitro's fitness to serve as a police officer was not obtained. Such information pertained to Solitro's alleged misconduct, including incidents involving use of excessive force, during his tenure as an employee at the Rhode Island Training School ("the training school"), the state's juvenile detention facility. Moreover, plaintiff contends that some negative background information was provided to the police department but disregarded during the hiring process. Also, plaintiff complains that Solitro's prior assault upon Small was not adequately investigated or taken into consideration in the screening and hiring process.

In order to sustain her claim that the City's hiring decision renders the municipality liable under § 1983 for Solitro's unconstitutional conduct, the plaintiff must satisfy rigorous standards of culpability and causation. *Bd. of County Comm'rs of Bryan County, Okla. v. Brown,* 520 U.S. at 405, 117 S.Ct. 1382.

> To the extent that we have recognized a cause of action under § 1983 based on a single decision attributable to a municipality, we have done so only where the evidence that the municipality had acted and that the plaintiff had suffered a deprivation of federal rights also proved fault and causation.

*Id.* Such proof is particularly critical in the hiring context. "To prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Id.* at 410, 117 S.Ct. 1382. Inadequacies in the applicant

assessment process do not necessarily give rise to § 1983 liability. *Id.* at 411, 117 S.Ct. 1382.

A plaintiff must demonstrate that a municipal [hiring] decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision. Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute "deliberate indifference."

.        .        .        .        .

[A] finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong.

*Id.* at 411–12, 117 S.Ct. 1382 (emphasis in original).

■ Under *Bryan County*, the pertinent inquiry here is whether in view of Solitro's background, his unconstitutional use of deadly force was a "plainly obvious" consequence of his hiring as a police officer. *Id.* at 412, 117 S.Ct. 1382. As a matter of law, the facts proffered by plaintiff on this issue, do not satisfy this rigorous standard of culpability.

■ It is undisputed that the hiring of Providence police officers involved a multistep process instituted by the holding of a police academy. City's Statement of Undisputed Facts, ¶ 8. Applicants were required to pass both a written examination and an agility test. *Id.* Those candidates who successfully satisfied both of these requirements were then interviewed by a three-officer "review board." *Id.* Following a candidate's interview, each member of the board assigned the applicant a numerical score. The total points for each candidate were tallied and submitted to the police department's human resources division for ranking by numerical score. *Id.* Candidates were subject to elimination from the ranked list on the basis of the results of the their physical examinations, psychological testing and background investigations. *Id.* The remaining candidates were appointed to the academy in rank order. *Id.* The 57th and 58th academies drew from the same list. *Id.* The top 50 candidates comprised the 57th academy. *Id.* The 58th academy drew the next-highest group. *Id.* Solitro did not rank in the top 50 but was admitted into the 58th academy. *Id.*

It is undisputed that a pre-appointment investigation into Solitro's background was undertaken by Perez on the City's behalf. *Id.,* ¶ 11; Pl.'s Response to City's [Un]disputed Facts, ¶ 10. The parties dispute whether Perez received any training or supervision either with regard to conducting background investigations in general or concerning Solitro's investigation specifically. Pl.'s Statement Additional Disputed Facts (3/14/03), ¶ 16; City's Statement of Undisputed Facts, ¶ 10; Pl.'s Response to City's [Un]disputed Facts, ¶ 10.

Further, it is undisputed that Perez interviewed Roosevelt Benton ("Benton"), the Deputy Director for Programs at the training school, where Solitro was employed until his admission into the academy, and that Benton described Solitro as "[An] honest guy who really wants to become a police officer, who would do a good job." City's Statement of Undisputed Facts, ¶ 11. Additionally, there is no dis-

pute that, as part of Solitro's background investigation, Perez spoke with Ann MacDougall ("Mac Dougall"), who was Solitro's supervisor at the training school. *Id.;* Pl.'s Response to City's [Un]disputed Facts, ¶ 11.

The City has proffered evidence that MacDougall told Perez that Solitro would make a good police officer, and that Solitro was the type of person she would like to see as a police officer in the municipality in which she resided and answering a call for trouble at her home. City's Statement of Undisputed Facts, ¶ 11. The plaintiff does not dispute that MacDougall so replied to questions posed to her by Perez. Pl.'s Response to City's [Un]disputed Facts, ¶ 11. However, plaintiff challenges the veracity of MacDougall's statements to Perez.

First, plaintiff cites MacDougall's April 2003, deposition testimony in which MacDougall testified that she only spoke to Perez for five minutes, and that, at the time that Perez interviewed her, she believed that Solitro already had been hired as a police officer and that her comments would not change that result. *Id.* At her deposition, MacDougall recalled recommending that Solitro be disciplined when he allegedly took a phone of the wall and threw it toward a handcuffed resident. *Id.* She testified that she reprimanded Solitro for improperly ordering a nurse to leave the building. *Id.* However, plaintiff does not contend that MacDougall provided Perez, or any other member of the police department, with this information prior to January 28, 2000.

Second, plaintiff relies on unsworn comments that MacDougall purportedly made concerning Solitro in a February 9, 2001 interview.[17] *Id.* MacDougall's unsworn,

conclusory remarks do not comport with the requirements of Fed. R.Civ. P 56(c) and plaintiff has not provided the factual basis for MacDougall's conclusions. In any event, there is no evidence that MacDougall shared her opinions with anyone in the Providence police department prior to January 28, 2000.

In further support of her claim that Solitro was unfit to serve as a police officer, plaintiff relies on comments allegedly made by three other training school supervisors, John Abbate ("Abbate"), Brian Terry ("Terry") and William Hurlbut ("Hurlbut"), following the January 28, 2000 incident. Pl.'s Response to City's [Un]disputed Material Facts (8/18/03) ¶ 11; Pl.'s Statement Additional Disputed Facts (3/14/03) (contained in Rule 12.1 statement filed by plaintiff in opposition to Prignano's and Sullivan's motion for summary judgment), ¶¶ 18, 19. Only Hurlbut was deposed. Abbate's and Terry's unsworn remarks were purportedly made in the course of interviews conducted on February 9, 2000. Therefore, only Hurlbut's deposition testimony is of sufficient quality to support plaintiff's opposition to the City's motion for summary judgment.

In any event, even if all of plaintiff's assertions, including those supported solely by reference to unsworn statements, are taken into consideration, the proffered "facts" are, as a matter of law, insufficient to support a jury's determination that Solitro's unconstitutional use of deadly force was a "plainly obvious" consequence of his hiring as a police officer. Specifically, the assertions as set forth in plaintiff's Rule 12.1 statements lack the requisite evidentiary quality required to successfully oppose a motion for summary judgment.

---

17. Throughout her Rule 12.1 statement, plaintiff consistently references MacDougall's interview as occurring on February 9, 2001. Interviews of other two other training school employees, Brian Terry and John Abbate, are described by plaintiff as having been conducted on February 9, 2000.

For example, plaintiff has provided some evidence that, prior to Solitro's hiring, Terry called Major McCartney of the Providence Police Department and told him that he had serious reservations concerning Solitro's fitness to serve as a police officer. Pl's Statement Additional Disputed Facts (3/14/03), ¶ 18. However, plaintiff has not delineated the factual basis for Terry's alleged opinion.

Also, plaintiff cites Solitro's alleged prior use of excessive force as supporting a determination that Solitro was unfit to be a police officer. Pl.'s Resp. to City's Statement of [Un]Disputed Facts (8/18/03), ¶ 11. The plaintiff asserts that while employed at the training school, "Solitro engaged in and/or was accused of serious misconduct, such as repeated use of excessive force grabbing a resident by the throat and assaulting him, other irrational misconduct such as throwing chairs, breaking a pool table, throwing a phone at a cuffed resident and repeated unexcused absences." *Id.* Other than a general assertion that Solitro was "reprimanded or disciplined approximately 9 times, including at least one for excessive force, and 6 for excessive absences or improper sick leave," she has not otherwise described the events for which Solitro was disciplined, and whether those instances involved the use of excessive force. *Id.* Moreover, plaintiff does not indicate which accusations regarding Solitro's use of excessive force were determined to be meritorious and which were not. The plaintiff has failed to indicate the ultimate disposition of any incident. For example, the eventual disposition of the phone-throwing incident recounted by MacDougall at her deposition has not been provided. Finally, although not dispositive of whether Solitro's unconstitutional use of deadly force was a "plainly obvious" consequence of his employment as a police officer, plaintiff has not proffered any evi-

dence that any of the alleged instances of misconduct involved Solitro's use of deadly force.

■ In further support of her screening and hiring claim, plaintiff cites Solitro's 1989 assault on Small, an off-duty, African–American Providence police officer. It is undisputed that Solitro assaulted Small in a nightclub in 1989. Further, plaintiff has proffered evidence that Solitro directed a racial epithet toward Small after Small had identified himself as a police officer. Pl.'s Response to City's [Un]disputed Material Facts (8/18/03) ¶ 12; Pl.'s Statement Additional Disputed Facts (3/14/03), ¶ 20. Solitro was charged with simple assault in connection with the incident.[18] The plaintiff does not contend that the incident involved the use of deadly force.

Prior to Solitro's acceptance into the academy, Sullivan interviewed Small concerning the then–10–year–old incident. Def.'s Prignano's and Sullivan's Statement of Undisputed Facts, ¶ 20. According to plaintiff, Small recommended that Solitro not be hired. Pl.'s Response to City's [Un]disputed Material Facts (8/18/03) ¶ 12.

As a matter of law, this more than 10–year–old incident, without more, is insufficient to support a determination that Solitro's unconstitutional use of deadly force was a plainly obvious consequence of his employment as a police officer.

In sum, the City is entitled to entry of summary judgment on the screening and hiring component of Counts III and IV. Although the factual assertions proffered by plaintiff present questions concerning whether the City's decision to hire Solitro was a prudent one, that issue is not before the Court for consideration. *See Bd. of County Comm'rs of Bryan County, Okla. v. Brown,* 520 U.S. at 407, 117 S.Ct. 1382

18. Solitro pled nolo contendere to the simple    assault charge.

("A showing of simple or even heightened negligence will not suffice."). Rather, this Court's inquiry is limited to whether the facts presented, when viewed in the light most favorable to the plaintiff, are sufficient to support a jury determination that Solitro's unconstitutional use of deadly force was a "plainly obvious" consequence of his appointment. As a matter of law, the proffered facts are insufficient to satisfy this rigorous standard. *See id.* at 410, 117 S.Ct. 1382.

### (d). *The Defendants' Failure to Properly Train Cornel Young, Jr.*

■ In Counts II, III and IV, plaintiff alleges that the City, Prignano, Ryan and Cohen are liable under § 1983 for their alleged inadequate training of the decedent with regard to off-duty response and the risks posed to African–American officers in such circumstances. Because plaintiff's claims are brought pursuant to § 1983, plaintiff must demonstrate, *inter alia*, the violation of a constitutional right.

The plaintiff's amended complaint does not identify which of decedent's constitutional rights she contends were violated by the defendants' alleged failure to provide him with proper training. In fact, the Constitution confers no explicit right to proper training. Further, as a matter of law, the training deficiencies alleged do not amount to a violation of the Due Process Clause.

In *Collins v. City of Harker Heights*, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), the Supreme Court determined that § 1983 did not provide a remedy for a municipal employee who was fatally injured in the course of his employment because the city customarily failed to train or warn its employees about known hazards in the workplace. *Id.* at 117, 112 S.Ct. 1061. Specifically, although the municipality's conduct may have been actionable under state law, the Court held that

§ 1983 was not applicable because the conduct was not a violation of the decedent's rights under the Due Process Clause. *Id.*

First, the Court noted that:

Neither the text nor the history of the Due Process Clause supports petitioner's claim that the governmental employer's duty to provide its employees with a safe working environment is a substantive component of the Due Process Clause... As we recognized in *DeShaney:* "The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. Nor does history support such an expansive reading of the constitutional text."

*Id.* at 126–27, 112 S.Ct. 1061 (quoting *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)).

Second, the city's alleged failure to train its employees, or to warn them of known risks, could not "be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Id.* at 128, 112 S.Ct. 1061. Rather, the claim was analogous to a state-law tort claim and, as such, did not amount to a federal constitutional violation.

Because the Due Process Clause "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society"... [the Court has] previously rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law... The reasoning in

those cases applies with special force to claims asserted against public employers.

*Id.* (quoting *Daniels v. Williams,* 474 U.S. 327, 332, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)) (other citations omitted). In sum, the Due Process Clause was neither " 'a guarantee against incorrect or ill-advised personnel decisions' .. [n]or [a] guarantee [to] municipal employees [of] a workplace that is free of unreasonable risks of harm." *Id.* at 129, 112 S.Ct. 1061 (quoting *Bishop v. Wood,* 426 U.S. 341, 350, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)).

Under *Collins,* plaintiff's § 1983 claims fail as a matter of law to the extent that such claims are premised on defendants' alleged deficient training of the decedent. Accordingly, Ryan's and Cohen's motion for summary judgment is granted as to this component of Count II; the City's motion for summary judgment is granted as to this aspect of Counts III and IV.

### 3. *Reconsideration of Prignano's and Sullivan's Motion for Summary Judgment as to Count II..*

In view of the Court's grant of summary judgment in favor of Ryan, Cohen and the City, as to Counts II, III and IV, the Court engaged in a *sua sponte* reconsideration of its earlier ruling in which it denied, in part, Prignano's and Sullivan's motion for summary judgment. Count II of the amended complaint directs the following allegations against defendants Prignano and Sullivan:

(1) Prignano and Sullivan acted with reckless disregard and deliberate indifference in the screening and hiring of Solitro, and that such conduct caused the fatal shooting of Cornel Young, Jr.
(2) Prignano and Sullivan acted with reckless disregard and deliberate indifference in failing to discipline and otherwise supervise Saraiva in conjunction with his alleged misconduct on Septem-

ber 18, 1999, and that such conduct caused the fatal shooting of the decedent.
(3) Prignano ... acted with reckless disregard and deliberate indifference in failing to adequately train Cornel Young, Jr., Saraiva and Solitro "concerning the known risks of taking police action while off duty, including, without limitation the known risk of misidentifying and shooting off duty police officers, particularly African–American and Hispanic officers" and that such conduct caused the fatal shooting of Cornel Young, Jr.

First Amended Complaint, ¶¶ 111–113.

The claims directed against Prignano and Sullivan in Count II are premised on the same factual assertions upon which plaintiff based her screening and hiring, discipline and training claims against the City, Ryan and Cohen.

On May 30, 2003, this Court issued a written decision on the motion for summary judgment that had been filed by defendants Prignano and Sullivan concerning Count II. The Court denied the motion in its entirety as it pertained to all claims in Count II that had been asserted against Prignano. With regard to the claims directed against Sullivan, the motion was granted in part and otherwise denied. The Court granted the motion to the extent that Count II pertained to Sullivan's alleged failure to discipline Saraiva in conjunction with an incident that occurred on September 18, 1999. Also, the motion was granted as it pertained to Sullivan's investigation of Solitro's assault on Small.

Subsequent to the Court's May 30, 2003, ruling, the City, Ryan and Cohen filed their respective motions for summary judgment. Accordingly, the Court has now had the benefit of the Rule 12.1 statements filed by the parties in conjunction with the City's, Ryan's and Cohens motions. Upon reconsideration, in light of

this Court's findings as to the material facts not in dispute, and for the same reasons that require grant of the City's, Ryan's and Cohen's motions for summary judgment, the motion for summary judgment filed by Prignano and Sullivan as to Count II is granted as to all claims directed against either or both of them. Specifically, summary judgment is granted in favor of Prignano and Sullivan on plaintiff's claims concerning defendants' alleged deficiencies in disciplining and supervising Saraiva and in screening and hiring Solitro. Also summary judgment is granted in favor of Prignano on plaintiff's claim pertaining to his failure to properly train Saraiva, Solitro and Young.[19]

### C. The State Law Claims (Counts V, VII, VIII and IX).

Counts V, VII, VIII and IX are the focus of one or more of the defendants' motions for summary judgment, reconsideration and judgment on the pleadings. Specifically, Ryan and Cohen seek entry of summary judgment in their favor as to Counts V, VII and IX; in a combined motion for reconsideration and/or judgment on the pleadings, the City, Prignano and Sullivan seek dismissal of the claims asserted against them in Counts V, VII, VIII and IX.

In Count V, plaintiff asserts a state tort claim of assault and battery against all defendants. Count VII alleges gross negligence and negligence by Prignano, Sullivan, Ryan, Cohen and Saraiva.[20] Count VIII sets forth a claim against the City, under a theory of respondeat superior, for the alleged malfeasance of the other named defendants. In Count IX, plaintiff seeks redress against all defendants pursuant to Rhode Island's wrongful death act, R.I. Gen. Laws § 10–7–1, et seq. Each of these claims is precluded by Rhode Island's IOD statute, R.I. Gen. Laws § 45–19–1, et seq. Section 45–19–1 provides in pertinent part:

**Salary payment during line of duty illness or injury.**

(a) Whenever any police officer ... of any city ... is wholly or partially incapacitated by reason of injuries received ... in the performance of his or her duties, the respective city ... by which the police officer ... is employed, shall, during the period of the incapacity, pay the police officer ... the salary or wage and benefits to which the police officer ... would be entitled had he or she not been incapacitated, and shall pay the medical, surgical ... or other attendance, or treatment, nurses, and hospital services, [and] medicines ... for the necessary period, except that if any city ... provides the police officer ... with insurance coverage for the related treatment, [or] services ... then the city ... is only obligated to pay the difference between the maximum amount allowable under the insurance coverage and the actual cost of the treatment, [or] service

Although the statute contains no express exclusivity provision, the Rhode Island Supreme Court has determined that § 45–19–1 provides "the exclusive remedy for police officers injured in the line of duty with *respect to their employers.*" *Kaya v. Partington*, 681 A.2d 256, 260 (R.I.1996)

---

**19.** The Court premised its earlier denial of Prignano's motion for summary judgment as to the sufficiency of the training provided to Cornel Young, Jr., on Prignano's failure to show the absence of a factual dispute material to that issue. However, under *Collins v. City of Harker Heights*, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), plaintiff's § 1983 claim concerning decedent's training fails as a matter of law. Therefore, it was not necessary for the Court to reach an examination of the evidence presented on that point.

**20.** As previously set forth, plaintiff has voluntarily dismissed her claims against Saraiva.

(emphasis in original). Moreover, "[S]imilar sound public policy requires that the exclusivity of the remedy should apply not only with respect to the employer but also with respect to fellow officers, superior officers, and officers of the municipal corporation." *Id.*

> In our opinion it would create a result not intended by the Legislature for this court to hold that in addition to IOD benefits, police officers ... should have a right to sue their municipal and/or state employers. It would be productive of near chaos if we should recognize a right of action for police officers ... to sue their superior officers and fellow employees. In a paramilitary organization nothing could be more detrimental to good order and discipline than the encouragement of civil actions by police ... personnel against their employers and their superior officers arising out of perceived shortcomings in preparing them for dangerous circumstances that they must encounter on a daily basis. It is for this reason, in our opinion, that IOD legislation was originally adopted as an exclusive substitute for the speculative rights of action that they might have had against their employers and the community whose members they serve.

*Id.* at 261 (footnote omitted).

Subsequently, in *Hargreaves v. Jack*, 750 A.2d 430 (R.I.2000), the Rhode Island Supreme Court reiterated its holding in *Kaya.* The court then carved out a narrow exception to the exclusivity rule pronounced in *Kaya.* In *Hargreaves*, the widow of a municipal firefighter who had sustained fatal injuries in the course of the performance of his duties sought pecuniary damages pursuant to § 10–7–1 of the state's wrongful death act. At issue was whether § 45–19–12 of the IOD statute provided the exclusive remedy for surviving spouses.

The state supreme court noted that the purpose of the wrongful death act was "to remedy the pecuniary loss and the loss of consortium suffered by the surviving spouse although such remedy was unknown to the common law." *Id.* at 433. Under § 45–19–12, a surviving spouse was eligible to collect an annuity of a maximum of $3,600 per year, an amount significantly less than the benefits to which a surviving spouse was entitled under the state's workers' compensation act. *Id.* at 434. Unlike in *Kaya,* the IOD remedy at issue in *Hargreaves* was "not even remotely remedial." *Id.* In view of such circumstances, the supreme court declined to infer that the legislature, in conferring benefits under § 45–19–12, intended to exclude a surviving spouse's remedy under § 10–7–1. *Id.* at 435.

In so ruling, the supreme court emphasized the narrow scope of its holding. Specifically, recognizing that the wrongful death act encompassed two independent causes of action, the court noted that its holding was limited only to the damages plaintiff would be able to seek pursuant to § 10–7–1. *Id.* at 435 n. 7.

> This opinion in no way alters our holding in *Kaya.* The exclusivity provision inferred in *Kaya* would apply to those provisions in the wrongful death statute that authorize recovery for the pain and suffering sustained by the decedent and his loss of earnings prior to his demise.

> This opinion in no way purports to express any judgment upon the likelihood of success of a wrongful death action brought by the decedent's beneficiaries. We merely hold that § 45–19–12 of the IOD statute, with respect to the claim of a surviving spouse, is not an exclusive remedy, and that plaintiff is not limited to statutory benefits contained therein, but may seek additional remedies made

available by § 10–7–1 for wrongful death.

*Id.* at 435 (footnote omitted).

■ More recently, in *Strynar v. Rahill,* 793 A.2d 206, 208 (R.I.2002), the supreme court ruled that its holding in *Kaya* was equally applicable to claims of intentional misconduct. In so doing, the court recognized the broad reach of the exclusivity rule enunciated in *Kaya.*

[In *Kaya*] [t]his Court concluded that the IOD statute was intended to provide the exclusive remedy for claims against the police officer's employer, fellow officers, superior officers, and officers of the municipal corporation. Thus, under *Kaya,* the exclusivity of the statutory IOD remedy also applies to claims of intentional misconduct.

*Id.* (citing *Kaya,* 681 A.2d at 260).

■ Under *Kaya* and its progeny, Counts V, VII and VIII fail as a matter of law. Moreover, having reexamined the above-described trilogy of cases, this Court is now satisfied that all of the claims set forth in Count IX, the wrongful death count, similarly are precluded by the IOD statute. This Court's earlier determination to the contrary concerning a portion of Count IX was erroneous and has been withdrawn.[21]

*Kaya* established that the IOD statute provided the exclusive means by which police officers and firefighters could obtain redress for employment-related injuries. The supreme court's analysis in *Kaya, Hargreaves* and *Strynar* reveals the broad scope of the exclusivity rule. In *Hargreaves,* the Rhode Island Supreme Court did not hold that all wrongful-death claims brought pursuant to R.I. Gen. Laws § 10–7–1 fell outside the purview of the exclusivity rule. Rather, the court's holding in *Hargreaves* was a narrow one, limited to a surviving spouse's ability to pursue a claim for pecuniary damages pursuant to § 10–7–1.

The facts presented in this proceeding are distinct from those before the state supreme court in *Hargreaves.* On November 3, 2003, plaintiff, through counsel, confirmed that the decedent died without leaving issue or a surviving spouse. Therefore, under Rhode Island law, decedent's beneficiaries are his parents. R.I. Gen. Laws §§ 10–7–2, 33–1–10, 331–1. Young was 29 years-old at the time of his death on January 28, 2000. As further acknowledged by the plaintiff on November 3, 2003, neither of Young's parents was dependent upon him for support as of the time of his death.

In *Hargreaves,* at least two considerations, neither of which exists in the instant matter, weighed in favor of exempting a surviving spouse's claim for pecuniary damages from the exclusivity rule. First, the state's wrongful death act was intended to provide a means by which a surviving spouse could obtain redress for his or her pecuniary loss and loss of consortium. *Hargreaves,* 750 A.2d at 433. The IOD statute merely provided for payment of a "token amount" to a surviving spouse. *Id.* at 434. Second, the amount payable under the IOD was far less than the comprehensive benefits available to a surviving spouse under the state's workers' compensation act. Unlike the IOD statute, the workers' compensation act contained an express exclusivity provision. *Id.* at 435.

The Rhode Island Supreme Court is the final arbiter of state law. Where, as here a plaintiff selects a federal forum over an available state forum, the federal court cannot "steer state law into unprecedented configurations." *Martel v. Stafford,* 992

**21.** Order (11/6/03), Dkt. 352. *See* pp. 9–10, *supra.*

F.2d 1244, 1247 (1st Cir.1993). The state supreme court is free to reshape Rhode Island's judge-made law, the federal district court is not. *See id.* "Absent some persuasive indication that a [state] court would abandon its longstanding rule ... we are not at liberty to manufacture a basis for ignoring the rule." *Id.*

The *Kaya* trilogy does not provide any "persuasive indication" that the Rhode Island Supreme Court would carve out an additional exception to the exclusivity rule so as to permit a non-dependent parent of an adult child from pursuing a claim pursuant to § 10–7–1. As noted above, the exception created by the state court in *Hargreaves* is a narrow one. Also, unlike in *Hargreaves,* permitting suit to proceed in the instant matter would not further a recognized purpose of Rhode Island's wrongful death act. Moreover, the state's workers' compensation act does not provide for the payment of any monetary benefit to a non-dependent parent of an adult child. *Cf. Hargreaves,* 750 A.2d at 434. Finally, the Court's determination that each of plaintiff's state law claims is precluded by the IOD statute is consistent with state supreme court's admonition concerning suits by police officers against their superior officers and fellow employees. See *Kaya,* 681 A.2d at 261.

Therefore, because all of the claims asserted in Counts V, VII, VIII and IX are precluded by the IOD statute, Prignano, Sullivan, Ryan Cohen and the City are entitled to entry of judgment in their favor as to each of these four counts to the extent that those claims are directed against one or more of them.

### III. *Conclusion*

For the above reasons, and those set forth on the record on November 5, 2003:

(1) The motions of the defendants the City of Providence, Urbano Prignano, Jr., Richard Sullivan, John Ryan and Kenneth Cohen for judgment as a matter of law pursuant to Fed.R.Civ.P. 50 are denied.

(2) The motion of defendants Ryan and Cohen for entry of summary judgment in their favor as to all claims asserted against them by plaintiff in her first amended complaint, specifically in Counts II, V, VII and IX, is granted.

(3) The motion of the City for entry of summary judgment in its favor as to Counts III and IV of plaintiff's first amended complaint is granted.

(4) The combined motion of the City, Prignano and Sullivan for reconsideration and for judgment on the pleadings as to Counts V, VII, VIII and IX of plaintiff's first amended complaint is granted and such counts are dismissed as to these defendants.

(5) Upon *sua sponte* reconsideration of the motion for summary judgment filed by defendants Prignano and Sullivan as to Count II of plaintiff's first amended complaint, the motion is granted.

Judgment shall enter in favor of the defendants the City of Providence, Urbano Prignano, Jr., Richard Sullivan, John Ryan and Kenneth Cohen.

IT IS SO ORDERED.